**PHILADELPHIA FOOD STORE
EMPLOYERS' LABOR
COUNCIL et al.**

v.

**RETAIL CLERKS INTERNATIONAL
ASSOCIATION LOCALS 1239, 1247,
1248, 1250, 1251, 1371 AND 1393.**

Civ. A. No. 77–1146.

United States District Court,
E. D. Pennsylvania.

June 30, 1978.

Robert H. Kleeb, Philadelphia, Pa., Robert J. Bray, Jr., Bala Cynwyd, Pa., for plaintiff.

Bernard N. Katz, W. J. Borish, Philadelphia, Pa., Howard S. Simonoff, Camden, N. J., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Before this Court is an appeal from an arbitration award in favor of defendants Retail Clerks International Associations and the Local Unions (the Retail Clerks) by plaintiff Philadelphia Food Store Employers' Labor Council (the Council) and its members, Acme Markets, Inc. (Acme), Food Fair Stores, Inc., (Food Fair) and The Great Atlantic and Pacific Tea Company (A&P), in which the Council contends that Arbitra-

tor Lewis Gill's award should be vacated. The Council seeks summary judgment so vacating the award; the Retail Clerks seek summary judgment enforcing the award.

Material facts are not in dispute. Both parties are parties to a collective bargaining agreement. The agreement requires that all grievances or disputes arising during the term of the agreement concerning the interpretation or application of the provisions of the agreement would be submitted to arbitration; the arbitrator would have no power to amend, modify, or change the agreement, or establish any terms or conditions under the agreement; the decision of the arbitrator would be final and binding on the parties and employees involved; and in the event of an alleged or asserted breach of contract there was a procedure for expedited arbitration.

The agreement also contains the following language regarding strikes and lockouts:

"ARTICLE XXIII

No Strikes, No Lockouts

1. The parties agree that there shall be no authorized strikes, stoppages of work slowdowns, lockouts, or any other interferences of whatsoever nature during the life of this Agreement.

2. Nothing herein contained, however, shall compel any employee to walk through a picket line set up by the Local Unions, parties to this Agreement; Meat Cutters Retail Joint Council of Philadelphia and Vicinity; Philadelphia Teamsters Local Nos. 500, 169, 463; and American Bakery and Confectionery Workers Local Nos. 492, 6; provided said strike has received written approval of the International Unions affiliated with the Local Unions indicated above.

3. In the event of a threat of, preparation for, or the actuality of an unauthorized work stoppage, walkout or strike, the Union and all of its officials will take every reasonable action to prevent and to stop such proceedings by any of its members."

The Council also has a contract with the Meat Cutters Retail Joint Council of Phila-

delphia and Vicinity (the Meat Cutters). On or about March 6, 1977, the Meat Cutters, who were negotiating a new contract with the Council, called a strike against Food Fair. On or about March 9, 1977 the three companies closed down their stores, despite the fact that this resulted in closing out the Retail Clerks who had a contract still in effect and despite the no-lockout provision of that ongoing contract.

The issue then arose as to whether A&P and Acme, who were not being struck, violated the no-lockout provisions of their contract with the Retail Clerks, and this matter was submitted to Arbitrator Gill. On March 16, 1977, Gill issued an Award holding that A&P and Acme had violated the no-lockout provision of their contract with the Retail Clerks. This appeal followed; the Council now contends that the Award does not draw its essence from the collective bargaining agreement; it was rendered in manifest disregard of the law; it is arbitrary and capricious; it is based upon a gross mistake of fact; it contravenes public policy; it is beyond the submission to the arbitrator; it is ambiguous; and the arbitrator exceeded his authority under the agreement in rendering the award.

 It is well settled that reviewing courts can only set aside arbitration awards under extreme circumstances; judicial review of an arbitrator's award is severely limited and the arbitrator's interpretation of contractual provisions will not be disturbed if the interpretation can in any way be derived from the agreement. *Local 103 of I. U. E., R. & M. Workers v. RCA Corp.,* 516 F.2d 1336 (3d Cir. 1975). There is strong public policy in encouraging the peaceful settlement of industrial disputes by means of the device of arbitration. Thus, it has been stated that the "interpretation of labor arbitrators must not be disturbed so long as they are not in 'manifest disregard' of the law and that the issue of 'whether the arbitrators misconstrued a contract' does not open the award to judicial review." *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir. 1969). Accordingly, a labor arbitrator's award

draws its essence from the collective bargaining agreement if the interpretation can in any way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award. See *Ludwig Honold Mfg. Co. v. Fletcher, supra.*

■ Thus, the circumstances in which an arbitrator's award may be disturbed are extreme: the award may be disturbed if it is too vague and ambiguous for enforcement, *Ferrick v. B. & O. Railroad Co.*, 447 F.2d 89 (3d Cir. 1971); *Ludwig Honold Mfg. Co. v. Fletcher, supra*; or if the award is dishonest, capricious or beyond the authority of the collective bargaining agreement, *Price v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America*, 457 F.2d 605 (3d Cir. 1972); or if it is completely irrational, *Swift Industries, Inc. v. Botany Industries, Inc.*, 466 F.2d 1125 (3d Cir. 1972); or if it is patently frivolous, *Amalgamated Meat Cutters v. Cross Brothers Meat Packers*, 518 F.2d 1113 (3d Cir. 1975); or if an examination of the record before the arbitrator reveals no support for the award, *NF&M Corp. v. United Steelworkers of America*, 524 F.2d 756 (3d Cir. 1975).

■ The Council argues that Arbitrator Gill's award is within these extreme circumstances, and should therefore be vacated. Specifically, the Council contends that the Arbitrator capriciously disregarded the accepted definition of the term "lockout". A "lockout" is defined as "an employer's withholding of work from his employees in order to gain a concession *from them.*" (Emphasis added) Restatement of Torts, Section 787, comment a, cited in *Local 50, Bakery & Confectionery Workers, International Union of America, AFL v. General Baking Co. et al.*, 97 F.Supp. 73 (S.D.N.Y. 1951). See also *Brandenburg v. Capitol Distributors Corp. et al.*, 353 F.Supp. 115 (S.D.N.Y.1972); *News Union of Baltimore v. Hearst Corporation*, 278 F.Supp. 423

(D.Md.1968); *Associated Transport, Inc.*, 50 Lab.Arb. 236 (1968); *Akers Motor Lines, Inc.*, 51 Lab.Arb. 1955 (1968); *Mich. Lathing & Plastering Contractors Association*, 52 Lab.Arb. 997 (1969); *Bell Aerosystems Co.*, 54 Lab.Arb. 745 (1970).

■ The Council argues that for a lockout to exist, there must be four elements: (1) a dispute between the employer and those employees claiming to be locked out; (2) the closing of the place of employment by the employer; (3) the action of the employer must be offensive, not defensive; (4) the termination must be implemented as an economic weapon for the purpose of exacting concessions from those employees claiming a lockout. Furthermore, in their briefs before the arbitrator, the Unions contended that for a lockout to exist, there must be these elements: (1) the existence of a dispute; (2) offensive employer action; (3) the purpose of which is to use the locked out employees as leverage to gain concessions from the striking employees. The parties thus sharply dispute whether the dispute existing must be between the employer and the employees alleging the existence of a lockout, or whether it is sufficient that a dispute exist between the employer and *any employees*, and that the employer locks out the employees alleging such action in order to gain advantage over the employees with whom the dispute exists. It is highly significant that prior to the award both parties were in complete agreement that offensive conduct was required by the employer, and that the employer must be seeking leverage over or concessions from *some* employees, whether they be the employees in dispute with management or the employees claiming the lockout.

Despite this degree of understanding between the parties and despite the cases and arbitration decisions holding that a lockout requires that an employer withhold work in order to gain concessions from employees, Arbitrator Gill devised his own definition of this most crucial term. He held that a lockout exists if the employer is engaged in "strategic" conduct. In so doing, he held that an employer could violate the law if his

conduct was not offensive, or designed to gain leverage over or exact concessions from employees.

We find that in so holding Arbitrator Gill disregarded the intent of the parties. Clearly when the contract was drafted, and later when arbitration was sought, the parties deemed offensive employer action an element of a lockout. However, Arbitrator Gill nullified this requirement, without being asked to do so by the Unions in their brief submitted to him. By ignoring the intent of the parties, he reached a decision that does not draw its essence from the collective bargaining agreement, because his interpretation cannot be derived from the agreement, in light of the language—the term lockout—and other indicia of the parties' intention, as are manifested, *inter alia*, by the Unions' brief submitted to Arbitrator Gill. Furthermore, the award was in "manifest disregard" of the law, as well as of the agreement. Thus, this Court may disturb the award, pursuant to the dictates of *Ludwig Honold* and the other cases cited above.

Furthermore, the Court must so act to restore proper contractual equilibrium to the parties. It is ironic that Arbitrator Gill, in spite of the contractual prohibition against his amending, modifying, or changing the agreement, or establishing any terms or conditions under the agreement, did modify a crucial term and then observed:

"Finally, I must frankly acknowledge that the result here, viewed apart from the legalities of the matter, may seem to leave the bargaining postures of the parties somewhat lopsided and arguably unfair to management. The Clerks can and did shut down Food Fair entirely by honoring the Meatcutters' picket lines, while the management can only retaliate by shutting down the *meat departments* at Acme and A & P, thus putting management in the position of trying to fight with one hand tied behind its back. * * " *Retail Clerks International Association and Acme Markets, Inc. and The Great Atlantic and Pacific Tea Company, Inc.,*

(AAA Case No. 14 30 0308 77 MC) Slip Opinion at p. 6.

Thus, in vacating this holding by Arbitrator Gill, this Court is not only upholding the principle established by the Supreme Court in *United Steelworkers of America v. Enterprise Wheel and Car Corporation,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960), that an arbitrator does not sit to dispense his own brand of industrial justice, and that when an arbitrator's words manifest an infidelity to his obligation to draw the essence of his award from the collective bargaining agreement the courts have no choice but to refuse enforcement of the award; this Court is also unbinding the hand of the Council which was bound behind its back not by the terms of the contract but by Arbitrator Gill's brand of industrial justice; in so doing we are restoring the arm's length posture the parties occupied prior to this award.

In finding that offensive conduct or an effort to gain advantage over employees is a necessity in order to find the existence of a lockout, we then note that in his opinion Arbitrator Gill found that the decision of Acme and A&P to shut down was motivated by their desire to preserve the integrity of the multi-employer bargaining, to prevent the three member chains from being whipsawed by having one shut down while the others continued to be open, thus bringing obvious pressure on the struck chain to reach a settlement; he found that the "purpose was to prevent whipsawing in the Meatcutters' negotiations, rather than to gain some immediate or future concession from the Clerks * * *" *Retail Clerks International and Acme Markets, Inc. and The Great Atlantic and Pacific Tea Company, Inc., supra,* at p. 5. Thus, by his own terms, there was no offensive conduct or intent to gain concessions from the employees. Therefore, the termination of business at the Acme and A&P Stores cannot be considered a lockout in violation of the contract.

Accordingly, the plaintiff's motion for summary judgment will be granted and the defendant's motion for summary judgment will be denied.