### INTERNATIONAL FEDERATION OF PROFESSIONAL & TECHNICAL ENGINEERS, LOCAL 241

v.

### RCA CORPORATION.

Civ. A. No. 78-353.

United States District Court,
E. D. Pennsylvania.

Oct. 31, 1978.

Ira Silverstein, Philadelphia, Pa., for plaintiff.

John H. Leddy, Nicholas N. Price, Philadelphia, Pa., for defendant.

MEMORANDUM AND ORDER

NEWCOMER, District Judge.

This is a suit by Local 241 of the International Federation of Professional and Technical Engineers (Union) to review a labor

arbitrator's award, which denied a grievance filed by the Union on behalf of five of its members. Jurisdiction of the Court is based on § 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a).

Both the Union and the defendant RCA Corporation have moved for summary judgment. The Union seeks vacation of the arbitrator's award and judgment on the merits of the original grievance, and RCA asks the Court to uphold the arbitrator's decision. For the reasons set forth below RCA's motion will be granted and the Union's motion will be denied.

There are no material facts in dispute. In 1973 and early 1974 RCA transferred ten employees from its Moorestown, New Jersey plant to its Camden, New Jersey plant at a time when there were five employees laid off or on downgrade status at Moorestown and another five laid off or downgraded at Camden. The Union objected to RCA's action and filed a grievance on behalf of the five Camden employees who were not recalled or upgraded. For some reason, perhaps oversight, the Union did not grieve on behalf of the five Moorestown employees, and the arbitrator's award, rendered by Arbitrator Arnold M. Zack on February 19, 1975, was shaped accordingly:

"The Company did violate the parties' agreement in loaning design and drafting personnel from the Moorestown plant to the Camden plant when the latter plant had such employees . . . on layoff or downgrade. Those *Camden employees* who were affected by the company's action shall be reimbursed for earnings lost retroactive to the date of the grievance." (emphasis supplied)

The Union sought for about six months to reopen the grievance to include the five Moorestown employees. It argued in various proceedings that the Zack award did apply to the five Moorestown employees, but its efforts were unsuccessful. Finally, on October 23, 1975, the Union filed grievance No. 117966 on behalf of these five employees. That grievance was carried to arbitration before Arbitrator Lewis M. Gill, and it is the Gill award which is the subject of this lawsuit.

Grievance 117966 was worded as follows: "The Company has violated the General and Supplementary agreement by not paying Misters Clease, Smigiel, Ballilana, Bauer and Lienbach, the financial compensation *due them by the arbitrators decision in arbitration case no. 14 30 0221 74 M/J* [the Zack award]. The Union demands that these people be paid immediately."

Arbitrator Gill held a hearing on the grievance on August 31, 1977, and rendered a decision in favor of RCA on December 12, 1977.

Arbitrator Gill's decision was narrow in scope. He ruled only that the Zack award did not establish the rights of the five Moorestown employees to compensation for RCA's actions, specifically declining to reach the merits of the employees' *complaint* (as opposed to their grievance). In other words, he refused to address the question of whether the Moorestown employees' contractual rights were violated by RCA.

The Union and RCA do not agree on what questions were submitted to Arbitrator Gill. The Union argues that four questions were submitted at the hearing and that one of those questions was whether the five Moorestown employees were entitled to compensation in light of the precedent set by the Zack award. RCA defines the submission much more narrowly, arguing that the only issue submitted was that set forth in the written grievance.

Arbitrator Gill attempted at the hearing to summarize the issues presented for decision. After discussing two, or perhaps three, preliminary questions to be decided, Arbitrator Gill said that "there would be an issue, I gather, of whether this grievance should be upheld on its merits in light of what was said by both Arbitrator Zack and Knowlton."[1] (Arbitrator's Opinion, p. 5.)

---

1. Arbitrator Thoas Knowlton at one point decided a similar grievance in favor of a downgraded employee.

Union counsel then distinguished this issue from the issue of whether the employees were entitled to payment under the Zack award *on its face,* and Arbitrator Gill apparently agreed to the distinction.

Arbitrator Gill acknowledged in his opinion that his framing of the issue at the hearing could be read "as suggesting the broader issue posed by Union counsel" (Arbitrator's Opinion, p. 10), but looked to the *intent* of the parties and concluded that "Company counsel did not understand himself to be consenting to any broadening of the issue, nor did I intend to broaden it." *Id.*

The Court does not read the submission so narrowly. In fact, from the limited evidence available in the moving papers it appears that the Union's interpretation of the submission is substantially correct. Counsel for RCA did not object in any way to the framing of the question in terms of "whether this grievance should be upheld on its merits in light of what was said by both arbitrator Zack and Knowlton." It must have been clear to everyone that the written grievance made no reference to the Knowlton decision, and that the Knowlton decision could only affect the *merits* of the grievance at hand as a *precedent.* It is also clear that the Zack grievance is included in the sentence because it too could serve as a precedent.

 Courts may not review the merits of an arbitrator's decision. *United Steelworkers of America v. Enterprise Wheel and Car Corporation,* 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). However, it is well established that an arbitrator may not decide matters outside the scope of the submission, and a court may overturn an arbitrator's award if he has done so. *Id.,* pp. 597–8, 80 S.Ct. 1358. The issue presented by this case is slightly different. Here, the question is whether the court or the arbitrator is to decide what the terms of the submission were.

It would be logical for the court to decide what the submission was, because, first, a submission is a contract. The rules of contract formation present legal questions, best decided by a court. Second, if the court is to decide whether the arbitrator has exceeded the scope of the submission it is reasonable for the court to define what the terms of the submission were.[2]

 This Court does not necessarily agree with Arbitrator Gill that RCA never intended to broaden the issues submitted, and would perhaps be inclined to remand for a decision based on the Court's interpretation of the submission. The reason that the Court must instead hold for RCA is that the Collective Bargaining Agreement supports Arbitrator Gill's award. ¶ 7.06 of the Agreement says that "all grievances shall be presented in writing on grievance forms which will be provided from time to time by the Company." Under ¶ 7.08 arbitration is the third step of the procedure by which "duly presented grievances shall be presented and negotiated." Reading the two paragraphs together, an arbitrator could readily conclude that only written grievances are arbitrable—a conclusion which would foreclose consideration of any oral modification of the submission.

The grievance in issue was in the proper form, but as written it presents only the narrow issue of whether the Moorestown employees are entitled to compensation "*due them by . . . [the Zack award].*" (Emphasis supplied). Even assuming that this Court has the power to decide what the submission was, it cannot read the language of the grievance as demanding relief in accordance with the *precedent* set by the Zack award. The written grievance presented the same question that the Union was trying to resolve between February, 1975, and August, 1975, i. e. whether the Zack award "on its face" covered the Moorestown employees.

 If Arbitrator Gill had said in his opinion that he was obliged by the collec-

---

2. Authority on the point is extremely sparse. See 5 Am.Jur.2d, Arbitration and Award, § 147, n. 6.

tive bargaining agreement to consider only the written grievance without oral modification, this Court would affirm his decision without hesitation, notwithstanding the statements made at hearing. Questions of procedural arbitrability are for the arbitrator to decide, *John Wiley & Son, Inc. v. Livingston*, 376 U.S. 543, 557, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), and the collective bargaining agreement would certainly have supported such a ruling.

In short, the Court does not agree with the reasoning that supported Arbitrator Gill's decision but finds ample support in the collective bargaining agreement for the *result* that was reached; that is, that the narrow issue of the binding effect of the Zack award was the only issue properly to be considered by the arbitrator.[3]

The law of this circuit is that an arbitrator's award must be upheld if "the interpretation can in any rational way be derived from the agreement." *Ludwig Honold Manufacturing Co. v. Fletcher*, 405 F.2d 1123, 1128 (3d Cir. 1969). Furthermore, "[i]t is not within the province of a reviewing court to agree or to disagree with . . . the specific reasoning employed" by the arbitrator. *Id.* at 1132.

Another court of this District has followed *Ludwig Honold* on facts very similar to those of the instant case. *American Can Co. v. United Papermakers and Paperworkers, AFL–CIO*, 356 F.Supp. 495 (E.D.Pa. 1973). There, Judge Troutman wrote:

"[P]laintiff argues that although the arbitrator is not obliged to state his reasons, once he does so, his decision must be justified on those grounds. Here, the arbitrator rejected the union's argument that the dispute was procedural and that the contract was controlling. Plaintiff seems to argue that the decision may not now [in the court action] be justified on procedural grounds. We disagree with this assertion on the ground that under *Ludwig Honold* it is the *award* rather than the conclusion or the specific reason-

ing employed that a court must review. Since we have determined that the award did not manifestly disregard the terms of the agreement . . . we may not disturb the arbitrator's award." *Id.*, at 499–500 (Emphasis in original, footnote omitted).

The reason for such a standard of review is clear. Ideally, arbitration is a device by which expensive and time-consuming litigation is avoided. A standard of review which upholds an arbitrator if there is *any* basis for his decision in the collective bargaining agreement both discourages litigation and ensures that the agreement will be the primary determinant of the relationship between the parties.

In some cases limited court review will produce harsh results. Arbitrator Gill himself observed that there was "quite clearly a contractual wrong done to these Moorestown employees." (Arbitrator's Opinion, p. 10.) If this case were remanded with instructions to decide the submission as interpreted by this Court, it is possible that Arbitrator Gill would find that the collective bargaining agreement does not restrict the arbitrator to the written grievance, that he was therefore permitted to decide the submission as defined by this Court, and that the Moorestown employees should prevail on the merits. Nevertheless, the collective bargaining agreement easily supports the award as rendered. Hence, RCA is entitled to summary judgment in this proceeding.

---

3. To repeat, the Court agrees with the arbitrator's decision on the merits insofar as he decided only the "narrow" submission.