**WAREHOUSE EMPLOYEES,
LOCAL 169**

v.

**ACME MARKETS, INC.**

**Civ. A. No. 78–1742.**

United States District Court,
E. D. Pennsylvania.

July 12, 1979.

Ira Silverstein, Meranze, Katz, Spear & Wilderman, Philadelphia, Pa., for plaintiff.

Alfred J. D'Angelo, Jr., Cunniff, Bray & McAleese, Bala Cynwyd, Pa., for defendant.

## MEMORANDUM

RAYMOND J. BRODERICK, District Judge.

In this action brought pursuant to section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185(a),[1] plaintiff, Warehouse Employees, Local 169 (Local 169), seeks to have the Court vacate an arbitrator's award denying a grievance in connection with a layoff by defendant, Acme Markets, Inc. (Acme), of employees who were members of Local 169. Both Local 169 and Acme have moved for summary judgment. For the reasons hereinafter discussed, the Court will grant Acme's motion for summary judgment and deny Local 169's motion for summary judgment vacating the award of the arbitrator.

There are no material facts in dispute. Defendant, Acme, employs warehousemen at its Distribution Centers, who are represented, for collective bargaining purposes, by plaintiff, Local 169. Acme and Local 169 are parties to a collective bargaining agreement which became effective on January 30, 1977 and expires on February 2, 1980. Acme, Food Fair and A&P comprised the Philadelphia Food Fair Employers' Labor Council (Employers' Council), a multiemployer bargaining association which bargains collectively with various unions. On or about March 7, 1977 the collective bargaining agreement between the Employers' Council and the Meatcutters Union expired, and the Meatcutters commenced a strike against Food Fair. By the morning of March 8, Acme and A&P closed the meat departments of their retail stores in the Delaware Valley. On March 9, 1977, Acme closed all of its retail stores in the Delaware Valley and notified all warehousemen, except for a few who were kept working to remove perishables, that they would be laid off at the conclusion of their shift on that day. The Clerks Union filed a grievance against Acme and A&P on March 9, 1977 contending that its members had been locked out by the two chains in violation of the "no-lockout" clause of its collective bargaining agreement with the Employers' Council. On March 16, 1977, Arbitrator Gill held that the closing of the stores by Acme and A&P constituted a "strategic" shutdown and was, as a result, a prohibited lockout. In light of the Gill award, Acme reopened its retail stores on March 19, 1977 and terminated the layoffs of the warehousemen on that date.[2]

---

1. 29 U.S.C. § 185(a) provides that:

 Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Chapter; or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties . . .

2. In a subsequent civil action instituted in the United States district court by the Employers' Council, Arbitrator Gill's Award was vacated. *Philadelphia Food Stores Employers' Labor Council v. Retail Clerks Int'l Ass'n*, 453 F. Supp. 577 (E.D. Pa. 1978). The court held that the arbitrator's decision disregarded the intent of the parties and did not draw its essence from the collective bargaining agreement because the arbitrator, instead of requiring offensive conduct by the employer, together with an intention to gain leverage over or concessions from some employees, for a lockout to exist, held that a lockout existed since the employer was engaged in strategic conduct. The district court's decision was recently reversed by our Third Circuit, which held that the arbitrator's decision did not lack a rational basis, that the term "lockout" was clearly within the scope of the issue submitted to the arbitrator, and that the arbitrator's determination therefore should not have been disturbed. No. 78–2175 (3d Cir. July 3, 1979). As hereinafter discussed, the award of Arbitrator Koretz, which the plaintiff

As a result of the layoff of the warehousemen, Local 169 submitted a letter claim against Acme on March 17, 1977, contending that the closing of the Distribution Centers by Acme constituted a lockout by Acme of its warehouse employees represented by Local 169. An arbitration hearing was held on December 9, 1977 before Arbitrator Buckwalter, who declared the record closed as of January 28, 1978 and rendered his decision denying Local 169's claim on March 7, 1978. It is that decision of Arbitrator Buckwalter that is the subject of dispute in the case presently before this Court.

During this same period, the Bakery Workers Local 6, representing the bakery workers at Acme's Philadelphia bakery which had been closed along with Acme's retail stores and Distribution Centers, filed a lockout grievance against Acme. The hearing in connection with that grievance was held on December 27, 1977 before Arbitrator Koretz, whose decision finding that there was a lockout became known to the parties in the present action on February 24, 1978, prior to Arbitrator Buckwalter's decision, but subsequent to the closing of the record by Arbitrator Buckwalter.

Counsel for Local 169, by letter dated February 24, 1978, requested through the American Arbitration Association (AAA), under whose auspices the arbitration was held, that Arbitrator Buckwalter reopen the hearing in order to consider the Koretz decision. Acme objected to this request to reopen the hearing by letter dated February 28, 1978, but stated that in the event the AAA transmitted the request to Arbitrator Buckwalter, it should also transmit a copy of the Koretz Opinion and Award and a letter enclosed from Acme's counsel to Arbitrator Buckwalter, dated February 28, 1978, stating Acme's position that if the Arbitrator entertained Local 169's request, Acme preferred that he actually read the Koretz decision in conjunction with the enclosed letter. The AAA decided to transmit the request to Arbitrator Buckwalter, who ruled that the hearing would not be reopened. The parties were so notified by the AAA by letter dated March 6, 1978. Arbitrator Buckwalter rendered his decision denying Local 169's grievance on March 7, 1978.

In its motion for summary judgment vacating the award of the arbitrator, Local 169 contends that Arbitrator Buckwalter, by deciding not to reopen the hearing to accept the Koretz decision into the record, exceeded his authority and refused to hear pertinent and material evidence, thereby depriving plaintiff of a fair hearing. In its motion for summary judgment affirming the award of the arbitrator, Acme contends that because Arbitrator Buckwalter's decision drew its essence from the collective bargaining agreement, Acme is entitled, as a matter of law, to have his award affirmed by this Court.

 Jurisdiction to review arbitration awards exists in this Court pursuant to section 301(a) of the Labor Management Relations Act, 29 U.S.C. § 185. *See, e. g., Int'l Federation of Professional & Technical Engineers v. RCA Corp.*, 461 F. Supp. 957 (E.D. Pa. 1978); *Medo Photo Supply Corp. v. Livingston*, 274 F. Supp. 209, 213 (S.D.N.Y.), *aff'd*, 386 F.2d 451 (2d Cir. 1967); *Kracoff v. Retail Clerks Local Union No. 1357*, 244 F. Supp. 38, 40 (E.D. Pa. 1965). Reviewing courts traditionally have been reluctant to set aside arbitrators' decisions. This reluctance is consonant with the strong federal policy favoring the resolution of industrial disputes by arbitration. *See John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *Gavlik Construction Co. v. H. F. Campbell v. The Wickes Corp.*, 526 F.2d 777 (3d Cir. 1975). The court's policy in this regard stems from

---

claims should have been admitted into the record before Arbitrator Buckwalter, also was vacated in a subsequent civil action instituted by Acme in the United States district court.

*Acme Markets, Inc. v. Int'l Union of Bakery & Confectionery Workers, Local 6*, 470 F. Supp. 1136 (E.D. Pa. 1979).

the recognition that "[i]t is the arbitrators' construction which was bargained for . ." *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). A reviewing court may not interfere with an arbitration award simply because the court differs with an arbitrator's interpretation of provisions of the collective bargaining agreement; on the other hand, an arbitrator's zone of action is confined to the four corners of the bargaining agreement. *Id.; International Federation of Professional & Technical Engineers v. RCA Corp.*, 461 F. Supp. 957 (E.D. Pa. 1978).

The scope of our review of the arbitrator's award is narrowly circumscribed. We may only disturb the award where there is a manifest disregard of the collective bargaining agreement, totally unsupported by principles of contract construction and the law of the shop; when fraud, partiality, or other misconduct on the part of the arbitrator is shown; or when the award violates the command of some law, is too vague and ambiguous to be enforced, or is inconsistent with public policy. *Ludwig Honold Manufacturing Co. v. Fletcher*, 405 F.2d 1123 (3d Cir. 1969). The sole question before the Court is whether the arbitrator's decision is, "by reason of some circumstance outside the contract itself, 'so palpably faulty that no judge, or group of judges, could ever conceivably have made such a ruling.'" *International Union of Electrical, Radio and Machine Workers, AFL–CIO v. Peerless Pressed Metal Corp.*, 489 F.2d 768, 769 (1st Cir. 1973), *quoting Safeway Stores v. Bakery Workers Local 111*, 390 F.2d 79, 82 (5th Cir. 1968). It has long been the rule that an award will not be set aside merely because the arbitrator erred in finding the facts or applying the law. *Ludwig Honold, supra*, 405 F.2d at 1132; *Saxis Steamship Co. v. Multifacs International Traders, Inc.*, 375 F.2d 577, 582 (2d Cir. 1967); *Orion Shipping and Trading Co. v. Eastern States Petroleum Corp.*, 312 F.2d 299, 300 (2d Cir.), *cert. denied*, 373 U.S. 949, 83 S.Ct. 1679, 10 L.Ed.2d 705 (1963); *Transport Workers Union of Philadelphia, AFL–CIO, Local 234 v. Philadelphia Transportation Co.*, 283 F. Supp. 597, 599 (E.D. Pa. 1968). In this regard it must be remembered that it is the award, rather than the specific reasoning employed, that a court must review. *Schlesinger v. Building Service Employees International Union, Local 252*, 367 F.Supp. 760, 764 (E.D. Pa. 1973); *American Can Co. v. United Papermakers and Paperworkers, AFL–CIO*, 356 F. Supp. 495–500 (E.D. Pa. 1973).

With the foregoing precepts as a foundation, we have reviewed the record of the arbitration and conclude that the motion of the plaintiff, Local 169, to have the Court vacate the arbitrator's award must be denied and that the motion of defendant, Acme, for summary judgment must be granted.

In determining whether an arbitrator exceeded his authority in making an award, this Court is guided by the standard enunciated by the Supreme Court in *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1409, 1424 (1960):

> [A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's awards manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

Acme contends that Arbitrator Buckwalter's award drew its essence from the collective bargaining agreement. Our Third Circuit, in *Ludwig Honold Manufacturing Co. v. Fletcher*, 405 F.2d 1123 (3d Cir. 1969), held that an arbitrator's award draws its essence from the collective bargaining agreement if "the interpretation can in any rational way be derived from the agreement." *Id.* at 1128; *International Federation of Professional and Technical Engi-*

*neers v. RCA Corp.*, 461 F.Supp. 957, 970 (E.D. Pa. 1978). Thus, this Court must determine whether Arbitrator Buckwalter's decision can in any rational way be derived from the collective bargaining agreement.

The contractual clause at issue in the present case is Section 36 of the collective bargaining agreement between Acme, through the Employers' Council and Local 169, which provides as follows:

It is mutually agreed that there shall be no strikes, lockouts, or stoppages of work, during the course of this Agreement.

In his decision, Arbitrator Buckwalter not only quoted Section 36 but spent several pages discussing the positions of Acme and Local 169 as to whether Acme's actions constituted a prohibited lockout. He concluded as follows:

Courts and arbitrators have, during at least the last several decades, held that in order for a lockout to exist, several essentials, or conditions, must exist:

1. There must be a labor dispute between the union and the employer.

2. The place of employment must be closed in part or in whole by the employer.

3. The closing must be offensive (strategic) rather than defensive.

4. The purpose of the closing is to use the loss of employment for gaining concessions from the employees.

In the instant case the Arbitrator can find no evidence of a dispute between Local 169 and the Employers' Council. Nothing specific was presented to show that the shutdown of the warehouses was offensive; the shutdown appears to have been for economic and operational reasons. Nor was any proof presented which indicated that the purpose of the closing of the warehouses was to use the loss of employment for gaining concessions from Local 169; the shutdown of the warehouses occurred in March 1977, almost three (3) years before the expiration of the current labor agreement between the . . . Employers' Labor Council and . . . Local No. 169, on February 2, 1980. The closing of the warehouses was neither arbitrary nor capricious. Clearly the time would come when, due to the fact that Acme's retail stores were closed, there would be no more work for the warehousemen to perform.

The Arbitrator concludes from the evidence and arguments presented that the shutdown of the warehouses did not violated [*sic*] Section 36, and therefore, was not a lockout.

It is clear that Arbitrator Buckwalter's interpretation can in some rational way be derived from the collective bargaining agreement and that his decision drew its essence from the agreement.

Plaintiff's contention that the Buckwalter award should be vacated because the arbitrator refused to consider the Koretz award is without merit. Whether or not a record before an arbitrator should be reopened so that the decision of another arbitrator in a different case can be made part of the record is a procedural matter. The Supreme Court, in *John Wiley & Sons v. Livingston*, 376 U.S. 543, 555–59, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964), held that procedural questions growing out of a dispute and bearing on its disposition are to be determined solely by the arbitrator. *See American Can Co. v. United Papermakers*, 356 F. Supp. 495 (E.D. Pa. 1973). Thus, the determination whether to reopen a record is a procedural matter properly left to the final disposition of the arbitrator. Furthermore, the arbitrator's decision not to reopen the record did not deprive the plaintiff of a fair hearing. Section 34 of the collective bargaining agreement between the parties provides that any dispute subject to arbitration should be arbitrated "pursuant to the rules of the American Arbitration Association." Rule 32 of the Voluntary Labor Rules of the American Arbitration Association provides:

The hearings may be reopened by the arbitrator on his own motion, or on the motion of either party, for good cause shown, at any time before the award is made, but if the reopening of the hearing would prevent the making of the award

within the specific time agreed upon by the parties in the contract out of which the controversy has arisen, the matter may not be reopened, unless both parties agree upon the extension of such time limit. When no specific date is fixed in the contract, the arbitrator may reopen the hearings, and the arbitrator shall have 30 days from the closing of the reopening hearings within which to make the award.

Thus the rules of the AAA vest discretion in the arbitrator as to whether or not a hearing should be reopened. The Koretz award, even if admitted, would in no way have been binding upon Arbitrator Buckwalter since it did not deal with the collective bargaining agreement between Acme and Local 169. Arbitrator Buckwalter recognized this at page 20 of his decision, where he stated: "This Arbitrator wishes to emphasize that it is a widely accepted principle that an arbitrator is not bound by the decision rendered by another arbitrator in a similar or identical case." *See* F. Elkouri & E. Elkouri, *How Arbitration Works* 262–65 (rev. ed. 1960).

Finally, the Court notes that the Koretz award itself was recently vacated, *Acme Markets, Inc. v. Int'l Union of Bakery & Confectionery Workers, Local 6*, 470 F. Supp. 1136 (E.D. Pa. 1979), thereby rendering moot plaintiff's claim that Arbitrator Buckwalter should have reopened the record to consider the Koretz award.

Therefore, Arbitrator Buckwalter clearly did not exceed his authority in refusing to reopen the hearing for the purpose of admitting the Koretz award.[3]

In view of our finding that Arbitrator Buckwalter, by deciding not to reopen the hearing to accept the Koretz decision into the record, did not exceed his authority nor refuse to hear pertinent and material evidence and our further finding that Arbitrator Buckwalter's decision drew its essence from the collective bargaining agreement, the plaintiff's motion for summary judgment setting aside the arbitration award will be denied and the defendant's motion for summary judgment will be granted.

---

**3.** Plaintiff claims in his motion for summary judgment that defendant agreed to submit the Koretz award to Arbitrator Buckwalter. The letter from defendant to the AAA and the letter from defendant to Arbitrator Buckwalter clearly indicate that defendant opposed plaintiff's request to have the record reopened, but felt that for Arbitrator Buckwalter to consider plaintiff's request to have the Koretz decision admitted, without more, would be prejudicial to defendant's case. Thus, defendant requested the AAA, in the event it chose not to rule on plaintiff's request, to forward to Arbitrator Buckwalter not only plaintiff's request that the

record be reopened to admit the Koretz award, but also the Koretz award itself, as well as two letters from defendant's counsel stating defendant's position as to why the Koretz award was not material to plaintiff's grievance.

The Court also notes that at the time of the hearing before Arbitrator Buckwalter, plaintiff was well aware that the Koretz hearing was scheduled and that a decision could be rendered prior to any decision by Arbitrator Buckwalter. No attempt was made at that time to arrange to keep the record open for introduction of the Koretz award, irrespective of its outcome.