**SIU DE PUERTO RICO, Caribe and Latinoamérica, affiliated to the Seafarers International Union of North America, AFL–CIO, Plaintiff,**

v.

**BLAIRMOOR DE PUERTO RICO, INC., Defendant.**

Civ. No. 80–0373.

United States District Court, D. Puerto Rico.

April 29, 1981.

López Lay & Vizcarra, Santurce, P. R., for plaintiff.

José A. Lebrón, Hato Rey, P. R., for defendant.

OPINION AND ORDER

GIERBOLINI-ORTIZ, District Judge.

This is an action filed by plaintiff, SIU de Puerto Rico, (the Union) requesting that the award rendered by an arbitrator be

vacated. Jurisdiction invoked under section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, is not in dispute. Defendant, Blairmoor de Puerto Rico, Inc., (the Company) answered the complaint and now the case is before us on cross motions for summary judgment. The material and pertinent facts regarding the controversy are also, in our opinion, not in dispute.

Considering all pertinent facts as shown in the record we find that the Company and the Union were parties to a collective bargaining agreement which became effective on May 13, 1978 and was to expire May 11, 1981. On October 18, 1979 the parties subscribed a Settlement Agreement whereby they agreed to the final discharge of all their mutual and respective contractual and statutory obligations under the agreement. This came about as a result of the Company's discontinuation of its operations at its Gurabo, Puerto Rico plant. At the time of the execution of the settlement agreement the parties had submitted to the Bureau of Conciliation and Arbitration of the Department of Labor and Human Resources of the Commonwealth of Puerto Rico, a labor dispute pertaining to the correctness of the payment of vacations to the employees for the year 1978 as required by Article XII of the Agreement. The settlement agreement subscribed by the parties provided, in its pertinent part:

"4. Both parties agree that they will abide by the decision to be issued by the Arbitrator in case A–1495, now pending of resolution by the Arbitrator of the Bureau of Conciliation and Arbitration of the Department of Labor and Human Resources of the Commonwealth of Puerto Rico, hereinafter the Bureau. Both parties agree that said decision will be final and binding to all legal effects.

The decision of the Arbitrator in this case will be applicable to the liquidation of vacation rights up to October 15, 1979."

During this same period and pursuant to the terms of the settlement agreement, the Company disbursed the amounts of money agreed to, in payment of severance benefits for employees, contribution to the Union's welfare plan, and for accumulated vacation and unused sick leave. On January 8, 1980 Arbitrator Jaime A. Belgodere rendered his decision determining that the Company did not violate Article XII (Vacations) of the collective bargaining agreement. That decision of the arbitrator is the subject of the controversy now before us.

The Union filed this action seeking to set aside the award of the arbitrator contending that the award was null and void because it was contrary to federal law, to the provisions of the agreement and in excess of the authority of the arbitrator. Conversely, the Company contends that the award is valid and binding and that by executing the settlement agreement of October 18, 1979, the Union bound itself to accept as final the arbitration award issued and to abide by said decision and not to appeal or otherwise challenge it. In its motion for summary judgment the Union reiterated its allegations of the complaint as to the nullity and voidness of said arbitration award and further contended that the settlement agreement could not be construed as preventing the Union from seeking the judicial review of the award rendered.

Jurisdiction to review arbitration awards exists in this Court pursuant to section 301(a) of the Labor Management Relations Act, 29 U.S.C. Section 185. See, e. g., *Int'l Federation of Professional and Technical Engineers v. RCA Corp.*, 461 F.Supp. 957 (E.D.Pa.1978); *Medo Photo Supply Corp. v. Livingston*, 274 F.Supp. 209, 213 (S.D.N.Y.), aff'd, 386 F.2d 451 (2d Cir. 1967); *Kracoff v. Retail Clerks Local Union No. 1357*, 244 F.Supp. 38, 40 (E.D.Pa.1965).

At the outset we must point out that reviewing courts traditionally have been reluctant to set aside arbitrators' decisions. This reluctance is consonant with the strong federal policy favoring the resolution of industrial disputes by arbitration. See *John Wiley & Sons, Inc. v. Livingston*, 376 U.S. 543, 84 S.Ct. 909, 11 L.Ed.2d 898 (1964); *United Steelworkers of America v. American Manufacturing Co.*, 363 U.S. 564, 80

S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Gavlik Construction Co. v. H. F. Campbell v. The Wickes Corp.*, 526 F.2d 777 (3d Cir. 1975).

In order to test the validity of the Union's position, we start our analysis with the decision of the Supreme Court in *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424, which established the standard for the judicial review of an arbitration award under a collective bargaining agreement. The Court ruled therein that the refusal of courts to review the merits of an arbitration award is the proper approach to arbitration under collective bargaining agreements. The federal policy of settling labor disputes by arbitration would be undermined if courts had the final say on the merits of the awards. But it added that, nevertheless, an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's awards manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

Thus the scope of our review is narrowly circumscribed. The Court can only disturb the arbitrator's findings of fact where there is a manifest disregard of the collective bargaining agreement. Absent extraordinary circumstances such as fraud, gross mistake, partiality or other misconduct on the part of the arbitrator, or when the award does not violate the command of some law, or is not too vague or ambiguous to be enforced, or if the award is consistent with public policy, we cannot set it aside. See, e. g., *Commonwealth Coatings Corp. v. Continental Casualty Co.*, 393 U.S. 145, 89 S.Ct. 337, 21 L.Ed.2d 301 (1968); *Electronics Corp. v. International Union of E., R. & M. W., Local 272*, 492 F.2d 1255 (1st Cir. 1974); *Ludwig Honold Manufacturing Co. v. Fletcher*, 405 F.2d 1123 (3d Cir. 1969). In *Ludwig Honold, supra*, the Third Circuit adopted the following restatement of the *Enterprise Wheel* case:

"At the very least this means that the interpretation of labor arbitrators must not be disturbed so long as they are not in 'manifest disregard' of the law, and that 'whether the arbitrators misconstrued a contract' does not open the award to judicial review.

Accordingly, we hold that a labor arbitrator's award does 'draw its essence from the collective bargaining agreement' if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention." (At page 1128, footnotes omitted).

Our own Circuit has expressed its position regarding this issue. In *International Union of E., R. & M. W. v. Peerless Pressed Metal Corp.*, 489 F.2d 768 (1st Cir. 1973) the refusal of the district court to enforce a legal arbitration award on the ground that the collective bargaining agreement would not permit the construction given it by the arbitrator was reversed. It was stated that the district court's view was not a permissible conclusion in view of *Peerless Pressed Metal Corp. v. IUE*, 451 F.2d 19 (1st Cir. 1971), in which it had ordered arbitration of the very issue of proper interpretation because the agreement could be interpreted as the arbitrator ultimately found.

We must now determine whether the arbitrator's decision in the present case draws its essence, or can in any rational way be derived, from the collective bargaining agreement between the parties.

The particular contractual clause at issue is Article XII (Vacations) of the agreement, which provides as follows:

"Section 1—Employees shall be eligible for vacation with pay yearly, on the basis of their length of employment at the commencement of the vacation period, as follows:

A. Less than six months of employment: three days.

B. Six months, but less than one year of employment: five (5) days.

C. One year, but less than five years of employment: thirteen (13) days.

D. Five years, but less than ten years of employment: sixteen (16) days.

E. Ten years or more of employment: eighteen (18) days.

Section 2—The employer shall have the right to schedule the vacation period of its employees. In the event the employer does not shut down the plant during the vacation period, it shall schedule the employee's vacation based upon the employee's seniority, where possible, if the production needs of the Company permit.

Section 3—Should any employee die, the Company shall pay his heirs the total accumulated vacation pay even for less than a year.

Section 4—The wages corresponding to each day of vacation shall be calculated by multiplying by eight the regular hourly wage or average piece rate earnings the employee was earning at the time that started his vacation. If the employee was paid on a piece rate basis, the Company shall select a representative period prior to the vacation to determine his vacation pay.

Section 5—The vacation with pay actually enjoyed by the employee shall be considered as worked for the purpose of fringe benefits established in this agreement.

Section 6—If a holiday falls during the vacation of an employee, the Company will grant him an additional day's pay for said holiday.

Section 7—The employee will receive his full pay for vacation on the same day he starts to enjoy them."

In his decision, the arbitrator carefully analyzed the documentary evidence submitted by the Company and by the Union in support of their respective contentions. In fact, he considered said documentary evidence very important for his decision. He stated as follows:

"In our opinion, said documentary evidence constitutes the best evidence, and therefore provides the elements of judgment necessary and adequate to resolve in a just and reasonable form this controversy relative to the criteria to be utilized in the computation of the vacations to which the employees covered by the collective bargaining agreement were entitled during the year 1978. We say the best evidence, because the Union in its Brief relies primarily in an exhaustive analysis of the documents submitted by the defendant to sustain its allegation that in the year 1978, as well as in preceding years, the vacations should have been paid on the basis of seniority of the employees and not on the requirement of having worked one hundred and ten (110) hours during each month in order to be entitled to accumulated vacations as is sustained (sic) by the company."

After a detailed analysis, the arbitrator concluded that nothing in the documents submitted revealed the hours worked by each employee in each one of the months involved in the claim in order to enable him to determine or concur with the Union that the one hundred and ten hour criteria was utilized or the one hundred and ten hours criteria was utilized at some times. He stated it as follows:

"From the above analysis of the evidence submitted we must conclude that up to a certain point and in some cases, there was not a defined and consistent policy in the Company as it refers to the payment of vacations. This is revealed by the form in which the plaintiffs who appeared at the hearing were paid, in that in the payment of vacations the criteria of one hundred ten (110) hours per month was not utilized and in the form in which the vacations were paid to several employees with seniority to whom the criteria of the one hundred and ten (110) hours was applied and the vacations to which they were entitled were prorated."

The arbitrator further concluded that the interpretation which the Union gave Article XII was contradictory because in Section 3 of Article XII the intention of the parties of applying the prorrating to the computation

of vacations was clearly established when, in the event of the death of an employee, the Company was to pay to his heirs the total of the accumulated vacation even for less than one year. He concluded that to interpret Article XII otherwise would leave without effect the parties agreement in Section 3 because the employee who died within the course of a year would receive vacations for the full year instead of the amount accumulated at the time of his death. He added that since Section 5 of Article XII provided that for the purpose of computing the vacations the time spent enjoying vacations was to be considered as time worked, vacations being one of the fringe benefits, he concluded that there is nothing in Article XII which excluded this particular fringe benefit from Section 5.

The arbitrator also considered subsection (j) of Article VI, which refers to seniority, and concluded that this was another instance where the purpose at the bargaining table evidenced that the intention was not to grant vacations independently of the hours worked by the employee. If that had been the intention, he said, an exception would have been made in reference to this particular fringe benefit in the contractual provisions he analyzed.

The arbitrator further concluded that even in the case of certain employees who received their full vacations during previous years there was no evidence presented by the Union to establish that this was not due to the fact that they were enjoying one of the leaves established in the agreement which had to be considered as time worked for the purposes of fringe benefits provided therein.

No evidence was presented to the arbitrator to establish whether any of the employees who received the maximum vacations to which they were entitled according to Article XII, had worked or not one hundred and ten hours during each month for the period prior to the year in controversy. Nothing was presented to demonstrate that the Company always paid the full vacations to the employees regardless of time worked. It is clear that the arbitrator's interpreta-

tion can be reasonably derived from the collective bargaining agreement and that his decision drew its essence from the same.

The Union's contention that the arbitrator's award should be vacated for being contrary to the express provision of Article XII is not well taken. Article XII should be construed in its proper context. Section 1 refers to the specific number of days to which employees were eligible for vacations. The arbitrator just followed the standards applied in the interpretation of contracts. See F. Elkouri & I. Elkouri, *How Arbitration Works* (Bureau of National Affairs, Inc., Third Edition, 1976), at pages 303 and 308 and when confronted with an absence in the agreement as to how the accumulation of vacations was to be computed, he relied on Mandatory Decree Number 77 which is the applicable decree for the industry to which the Company belonged. This conclusion was reasonable, proper and in accordance with *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, at 581–582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409. There the Supreme Court held that:

"The labor arbitrator's source of law is not confined to the express provisions of the contract as the industrial common law—the practices of the industry and the shop—is equally a part of the collective bargaining agreement although not expressed in it."

As we stated in *Caguas Expressway Motors v. Unión de Tronquistas* de Puerto Rico, 500 F.Supp. 113 (1980):

"Even if we were in disagreement with the interpretation given by the arbitrator, that would not be enough to set aside the arbitration award unless it is arbitrary, unreasonable, incomplete, improper or capricious. *Bettencourt v. Boston Edison Co.*, 560 F.2d 1045 (C.A. 1st Cir., 1977); *Federal Labor Union No. 18887 v. Midvale Heppenstall Co.*, 421 F.2d 1289 (C.A. 3rd Cir., 1970). It is the arbitrator's interpretation which was bargained for in the collective bargaining agreement, and so far as said decision concerns construction of the contract, the courts should

hesitate overruling him because their interpretation of the contract is different from his. *United Steelworkers of America v. Enterprise Wheel and Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960)."

We conclude that the arbitrator's award in the case at bar is or can be drawn from what the Supreme Court in the *Enterprise Wheel* case, *supra*, described as the labor arbitrator's source of law, that is: the express provisions of the contract and the tenets of industrial common law. Viewed in the light of the standards established for the review of arbitrator's awards, the award at issue must be upheld.

■ Finally, we note that the settlement agreement of October 18, 1979 between the parties precluded the Union from appealing or challenging the arbitration award at issue. The Union's contention was that although it agreed to abide by the decision of the arbitrator and not to appeal or otherwise challenge it, said agreement could only refer to a valid decision issued by the arbitrator and not to a decision contrary to the federal law. In view of our finding that the arbitrator did not exceed his authority nor acted contrary to the express provisions of the agreement, and that the decision drew its essence from it, we must conclude that by executing the settlement agreement the Union bound itself to accept as final the award issued, and could not challenge it. Furthermore, by accepting in paragraph 7 of the settlement agreement to release and hold the Company harmless for and from all further contractual obligations, the Union bound itself to honor the decision rendered.

Considering all the above, we conclude that there is no genuine controversy as to any material fact in accordance to Rule 56(c) of the Federal Rules of Civil Procedure and, therefore, defendant is entitled to judgment as a matter of law. See 10 Wright and Miller, Sec. 2727, p. 524, and *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Mack v. Cape Elizabeth School Board*, 553 F.2d 720 (1st Cir. 1977); *Kellerman v. Askew*, 541 F.2d 1089 (5th Cir. 1976); *Charpentier v. Fluor Ocean Servs., Inc.*, 534 F.2d 71 (5th Cir. 1976).

In view of the above, the Motion for Summary Judgment filed by plaintiff is DENIED and the Motion for Summary Judgment filed by defendant is GRANTED. Consequently, the complaint is dismissed.

The Clerk shall enter judgment accordingly.

· IT IS SO ORDERED.