**HOTELES CONDADO BEACH, La Concha and Convention Center, Plaintiff(s),**

v.

**UNION DE TRONQUISTAS DE PUERTO RICO, LOCAL 901, Defendant(s).**

**Civ. No. 82–2328 (JP).**

United States District Court,
D. Puerto Rico.

April 25, 1984.

Amelia Fortuño, Lespier, Muñoz & Ramírez, San Juan, P.R., for plaintiffs.

Pedro Varela, Luis F. Abreu Elias, Hato Rey, P.R., for defendants.

## OPINION AND ORDER

PIERAS, District Judge.

This is an action brought by Hoteles Condado Beach-La Concha and Convention Center (Plaintiff), pursuant to Section 301 of the Labor Management Relations Act, 29 U.S.C. Section 185, seeking to set aside an Arbitration Award issued on July 2, 1982, by Juan T. Rodriguez, Arbitrator of the Bureau of Conciliation and Arbitration, of the Department of Labor and Human Resources of the Commonwealth of Puerto Rico.

On April 6, 1983, Union de Tronquistas de Puerto Rico, Local 910, (defendant) filed a Motion for Summary Judgment and Memorandum. On May 10, 1983, plaintiff filed its Opposition to Motion for Summary Judgment and its own Motion for Summary Judgment, which was replied to by Defendant on May 19, 1983. On the basis of the Motions for Summary Judgment filed by the parties, together with the accompanying affidavits and documents submitted, this Court reaches the following determinations of fact and law:

### A. FACTS:

The essential facts in this case are not in dispute.

1. The Condado Beach-La Concha Hotels and Convention Center comprise a cluster of two hotels and a large convention area located in the heart of the tourist sector in Condado, Puerto Rico.

2. Plaintiff discharged employee Santiago Figueroa, a lifeguard employed at the tourism cluster, because he allegedly engaged in immoral conduct consisting of fondling his genitals and masturbating before Mrs. Kimberly Flores, a female guest staying at the Hotel. (P. 11–12 Transcript, *The People of Puerto Rico v. Santiago Figueroa*, Criminal case 81–995).

3. At the behest of the Union, an arbitration hearing was held on June 23, 1982, before a duly selected arbitrator of the Bureau of Conciliation and Arbitration of the Department of Labor and Human Resources of the Commonwealth of Puerto

Rico, in order to determine whether the discharge of the employee was justified or not. Both parties appeared represented by counsel.

4. On said date, Mrs. Kimberly Flores, Plaintiff's main witness, appeared in order to testify at the arbitration hearing. She was accompanied by her husband.

5. The Union objected to the presence of the witness's husband while she testified, alleging that the arbitration hearing was a private proceeding at which the witness' husband had no right to be present, and that the Union might call the witness' husband as an adverse witness.

6. The arbitrator determined that Mr. Flores could not be present while his wife testified and requested him to leave the room. Under these circumstances, Mrs. Flores refused to testify.

7. Plaintiff then presented into evidence, in substitution of her testimony, the judgment and transcript of the trial in criminal case # 81–995 (Obscene Exposure) heard on August 24, 1981, before the Hon. Luis Totti of the District Court of the Commonwealth of Puerto Rico (San Juan Part). In said case, the discharged employee had been found guilty of violating Article 106 of the Penal Code of Puerto Rico (Obscene Exposure), 33 L.P.R.A. Sec. 4068.

8. Although the Arbitrator in substitution of Mrs. Flores' testimony, admitted the judgment and transcript into evidence stating that he would grant to it whateer probatory weight it had; the Arbitrator retracted its admission and refused to grant it any weight in light of his alleged inability to evaluate the credibility of Mrs. Flores, who testified during the course of the criminal trial.

9. The discharged employee, Mr. Santiago Figueroa, did not testify at the criminal trial, nor was he present at the arbitration hearing to present his side of the case (Transcript, affidavit of Attorney Ruperto Robles).

10. The Arbitrator concluded that the disciplinary regulations which granted the plaintiff authority to discharge Mr. Figueroa only applied to Casino employees; therefore, the discharge of the non-casino employee accused of obscene exposure, according to the arbitrator, could not be upheld under the collective bargaining agreement.

B. STANDARD OF REVIEW:

Since the enactment of the Labor Management Relations Act in 1947, and particularly since the Steelworkers Trilogy of 1960, arbitration has played an increasingly crucial role as the preferred method for adjusting disputes arising over the interpretation or application of collective bargaining. *United Steel Workers v. American Manufacturing Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *United Steel Workers v. Warrior and Gulf Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960); *United Steel Workers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 80 S.Ct. 1358, 4 L.Ed.2d 1424 (1960). The reason for this prominence has been variously expressed: the arbitration process is more flexible, efficient, expedient, and less expensive than litigation; the arbitrator has more expertise in resolving controversies that arise under the industrial law of the shop than does a court of law; the parties have voluntarily agreed to submit its dispute to final and binding impartial adjudication; and arbitration is a favored alternative to other non-peaceful methods of conflict resolution, such as strikes, boycotts, etc. *Timken Co. v. United Steel Workers*, 492 F.2d 1178, 1180 (6th Cir. 1974); *Amalgamated Meat Cutters, Local 195 v. Crass Brothers Meat Packers, Inc.*, 518 F.2d 1113, 1120 (3rd Cir.1975); R.I. Abrams, "The Integrity of the Arbitral Award", 76 Mich.L.Rev. 231 (1977). For the above reasons, judicial restraint has characterized the review of arbitration awards.

Nevertheless, judicial deference to arbitration does not grant carte blanche approval to any decision that an arbitrator might make. *Local 1139, IERMW v. Litton Microwave Cooking Products*, 704 F.2d 393, 113 LRRM 2015 (8th Cir.1983). Thus, courts have recognized that there

exist situations where the conduct or result of an arbitration proceeding is so distant from the mutual expectations embodied in the collective bargaining agreement between the parties, or so alien to the impartiality and fairness envisioned in an arbitration proceeding as a whole, that an award resulting from said proceeding must be set aside, since it is unfaithful to the obligation of the arbitrator. *Newark Stereotypers Union v. Newark Morning Ledger Co.*, 397 F.2d 594, 599 (3rd Cir.), cert. denied, 393 U.S. 954, 89 S.Ct. 378, 21 L.Ed.2d 365 (1958); *Graham Service, Inc. v. Teamsters, Local 975*, 700 F.2d 420 (8th Cir. 1982). The seminal case in this area is *U.S. Steelworkers v. Enterprise Wheel, supra* 363 U.S. at 597, 80 S.Ct. at 1361, where the Supreme Court stated:

"... an arbitrator is confined to the interpretation or application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may, of course, look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award."

In accord with the above, the First Circuit, has established two factors permitting an arbitration award to be vacated. The first factor is when the award is unfounded in reason or fact, and so unconnected with the wording and purpose of the contract as to manifest an infidelity to the obligation of the arbitrator. *Bettencourt v. Boston Edison*, 560 F.2d 1045 (1st Cir.1977). The second factor is when the award is outside the collective bargaining agreement itself because it is based on reasoning so palpably faulty that no judge could ever conceivably have made such a ruling. *Bettencourt*, at 1050. The First Circuit has also established that the United States Arbitration Act, 9 U.S.C. Sections 1–14, applies to collective bargaining agreements. *Electronics Corporation of America v. International Union of Electrical, Radio & Machine Workers, Local 272*, 492 F.2d 1255, 1256 (1st Cir.1974). Particular attention must be focused on Section 10 of the Arbitration Act, which provides that, upon being petitioned by a party, the United States District Court in and for the District where the award was made, may issue an order vacating an award:

"(c) Where the arbitrators were guilty of misconduct in refusing to pospone the hearing, upon sufficient cause shown or refusing to hear evidence pertinent and material to the controversy; or any other misbehavior by which the rights of any party have been prejudice.

(d) Where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and indefinite award upon the subject matter submitted was not made."

The United States Arbitration Act provides that the United States District Court may issue an order vacating an arbitration award where an arbitrator has been guilty of misconduct in refusing to hear evidence pertinent and material to the controversy or of any other misbehavior by which the rights of any party have been prejudiced. The provisions of the Act, read in conjunction with the case law under Section 301 of the Labor Management Relations Act, supplies this Court with the legal guidelines for determining whether the award should be vacated. It is the arbitrator's construction which was bargained for, *U.S. Steel Workers v. Enterprise Wheel, supra*, 363 U.S. at 598–599, 80 S.Ct. at 1361–1362, but a labor arbitration's award must "draw its essence from the collective bargaining agreement if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention." *Victor Elec. W. & C. v. Intern. Br. of Elec. Wkers.*, 411 F.Supp. 338, 342 (D.R.I.1976), *quoting, Ludwig Honold Mfg. Co. v. Fletcher*, 405 F.2d 1123, 1128 (3rd Cir.1969).

C. CONCLUSIONS OF LAW:

1. *Exclusion of husband from the Hearing:*

The subject matter of the underlying controversy is whether the employee, Santi-

ago Figueroa, a lifeguard while on his job at the Hotel, engaged in offensive conduct of a sexual nature directed at a female guest of the Hotel in violation of plaintiff's rules and regulations. On the day of the arbitration hearing, Mrs. Flores, accompanied by her husband, presented herself to testify on behalf of plaintiff. Upon objection by defendant, the Arbitrator did not allow the husband to be present while Mrs. Flores testified. This resulted in Mrs. Flores not taking the witness stand. The reasoning of the Arbitrator, as expressed in his Award, was that: (a) arbitration is a private proceeding and the hearing is not, as a rule, open to the public; and (b) exclusion will prevent the possibility that one witness may be influenced in his testimony by the testimony of another witness.

▮ In the case at bar, the Arbitrator's decision to mechanically enforce the Union's objections is short-sighted and misconceived because it does not meet the rudimentary fairness expectation of an arbitration proceeding, as embodied in the Federal Arbitration Act and the applicable case law. It must be noted, first of all, that the rationale for sequestering witnesses during an adjudicative proceeding is to diminish the possibility of collusive and fabricated testimony advanced in order to create a false reconstruction of events. In the absence of this possibility, the justification for sequestering a witness is not present. An examination of the evidence in the case at bar clearly shows that this possibility was not present. The transcript from the trial of the discharged employee, submitted by plaintiff, shows that the only witness to the conduct that gave rise to the discharge was Mrs. Kimberly Flores. (P. 19, Transcript). It is clear from the record that her husband was not an eye-witness to those events; he was only an eye-witness to her distress (p. 177–181, Transcript). Since his relationship and participation in the case is totally unrelated to the witness' personal account of the impermissible conduct which gives rise to the discharge, the justification for excluding his presence during his wife's testimony is absent.

▮ It is clear from the circumstances of the case, that the presence of Mrs. Kimberly Flores' husband at the arbitration hearing was motivated by the desire to provide moral support while she testified regarding the offensive sexual conduct which she witnessed while a guest at the Hotel. Often, offensive conduct of a sexual nature is so distraughtful and shocking that the affected persons are reluctant to engage in a public elucidation of the events. Therefore, in light of the public interest in excising offensive conduct of a sexual nature which harms the privacy interest of a person, testimony from the affected persons should be procedurally encouraged, so long as no legitimate competing interest is unduly affected. This Court cannot see any legitimate justification for excluding her husband's presence in such a role. Arbitration proceedings are informal, flexible procedures in which the liberality of the norms of evidence is encouraged in order to afford the parties the amplest opportunity to arrive at the truth of the underlying matters. A collective bargaining agreement is a contract; it is to be more liberally construed than an agreement between private individuals. *Peerless Pressed Metal Corp. v. Int'l Union of E., R. & M.W.*, 451 F.2d 19 (1st Cir.1971), *cert. den.*, 414 U.S. 1022, 94 S.Ct. 445, 38 L.Ed.2d 313. Certainly, as the witness' companion at the Hotel while the incident is alleged to have occurred, Mr. Flores is a person related to the incident with a valid claim to be present as an encouraging companion during his wife's testimony at the hearing. Furthermore, given the absence of any real possibility of collusion, the arbitrator's conduct in excluding the witness' husband, with the concomitant result of having her not testify, clearly frustrates the objectives of affording the parties the amplest opportunity to present their case.

2. *Arbitrator's refusal to consider the transcript:*

▮ The arbitrator's conduct is compounded by the fact that, although he admitted the transcript of the trial in Crimi-

nal Case No. 81–995 into evidence, he refused to grant it any weight on the grounds that he could not observe the demeanor and weigh the credibility of the persons who testified at the trial. There is absolutely no reason sustaining the logic of the arbitrator. The arbitrator changed his mind as to his decision to admit the transcript in evidence. Yet, it was too late to change his mind. Plaintiff submitted its case relying on the transcript; otherwise, plaintiff could have taken other steps to prove its case before the arbitrator. The arbitrator did not receive any testimony refuting Mrs. Flores' statements in the transcript. It is well established that arbitration is a liberal procedure where flexibility and informality must prevail in order that all pertinent matters reach the arbitrator. *SIU de Puerto Rico v. Blairmoor de Puerto Rico,* 513 F.Supp. 849, 853 (D.P.R. 1981), *citing,* F. Elkouri & I. Elkouri, *How Arbitration Works* (Bureau of National Affairs, Inc., Third Edition, 1976). The transcript represents the statements of various persons, given at trial, under oath, and subject to cross examination. As such, pursuant to Rule 803 of the Federal Rules of Evidence, it is admissible into evidence, even though the declarants are available as witnesses. Furthermore, it is also admissible into evidence, pursuant to Rule 804 of the Federal Rules of Evidence, as former testimony given by a witness in a prior proceeding. At the criminal trial, the party against whom the testimony was offered at the arbitration hearing was represented by counsel and had an opportunity and similar motive to cross-examine the witness. Under this circumstance, the transcript enjoys substantial guarantees of trustworthiness and must be credited as reliable evidence submitted in substitution of the testimony of Mrs. Kimberly Flores. The fact that the arbitrator could not evaluate the demeanor of the witnesses is irrelevant, in light of the guarantees of trustworthiness that said transcript enjoys, particularly since the witnesses at the criminal case were all fully and extensively cross-examined by counsel representing the discharged employee. 5 Wigmore on Evidence, Sections 1365, 1396.

It is the duty of an arbitrator to afford the parties sufficient latitude and opportunity to present their case. In this action, it is clear that the arbitrator palpably relied on faulty judgment in order to exclude and disregard the crucial testimony and evidence presented by plaintiff to prove its case. The transcript of the criminal case enjoys all the guarantees of trustworthiness required by the rules of evidence and is admissible as a reliable document in a court of law. From the above, there is no reason why it should not constitute a reliable part of the record as a whole in the arbitration proceeding and the arbitrator's explanation for excluding the transcript is not valid. Failure to admit and consider evidence in the arbitration proceedings was construed by the Puerto Rico Supreme Court in *J.R.T. V. Autoridad de Communicaciones,* 110 D.P.R. 879 (1981), as a violation of Due Process and the fact that the arbitrator in said case did not consider a letter stating that the employee was employed by the Puerto Rico Distillers while she was also getting paid by the Autoridad, was sufficient for the Puerto Rico Supreme Court to vacate the arbitration award. Under the circumstances of the case at bar, the Arbitrator, in dismissing the transcript admitted by him as evidence and this being the only evidence before him, acted in violation of procedural safeguards, thereby substantially prejudicing the rights of the plaintiff.

The exclusion by an arbitrator of evidence central and decisive to a party's position, so affects the fairness of the proceeding as a whole, that such action must be considered arbitrary, unreasonable, incomplete, improper and capricious. Accordingly, we conclude that the conduct described above is so destructive of plaintiff's right to present his case, that it warrants the setting aside of the arbitration award. *Caguas Expressway Motors v. Union de Tronquistas de Puerto Rico,* 500 F.Supp. 113 (D.P.R.1980).

### 3. *Misconstruction of the Contract:*

The arbitrator in this case engaged in such a conspicuous misconstruction of the

contract, that it cannot be said that his award draws its essence from the collective bargaining agreement. Article IX Section 7 of the Collective Bargaining Agreement in effect between the parties at the time the discharge occurred, establishes that plaintiff and defendant "have adopted disciplinary regulations, as set forth in (an) Appendix... which is made part of this Collective Bargaining Agreement."

All the Disciplinary Regulations in the Appendix of the Collective Bargaining Agreement are captioned at the top with a heading which provides:

"The following disciplinary rules apply to every employee covered by this Collective Bargaining Agreement:"

Rule 9 and 10 of the Disciplinary Regulations is columned in the Appendix as follows:

| | First Offense | Second Offense |
|---|---|---|
| 9) Conduct which offends the morals or any offense involving moral depravation during working hours or within company premises. | Suspension or Dismissal | Dismissal |
| 10) A guilty verdict for a felony offense or one that involves moral depravation. | Suspension or Dismissal [a]. | Dismissal |

[a] "The Chance Game Regulations, 15 RRPR, § 76(a)2, requires as a condition to be a Casino employee, that the person has never been convicted of a felony or an offense which involves moral depravation, and prohibits the Casino employees to play. If any of these provisions is infringed, the Tourist Company will not issue a licence to the employees to perform in the Casinos of Puerto Rico, which shall constitute a violation of the regulations adopted pursuant to the Chance Game Act. In the event of Casino employees, therefore, violation of these two rules will cause the dismissal of the employee."

It is clear, that Rule 10 applies to the Casino employees, in light of the public policies embodied in the Puerto Rico Gambling Act. There is no indication, however, that it exempts other Hotel employees. On the contrary, the introductory paragraph of the Disciplinary Regulations state that these rules shall apply to every employee covered by the Agreement. The assumption expressed by the arbitrator (Arbitration Award, p. 7), that Rules 9 and 10 applied exclusively to Casino employees is a non-fact, since the contract clearly does not limit Rule 9 to Casino employees; this is seen by the fact that Rule 9 does not have Footnote "a". At the time the employee was dismissed, there was no criminal verdict outstanding. In the absence of a court verdict at the time of dismissal, it is obvious that his dismissal is not based on Rule 10; but on Rule 9, which provides for the suspension or discharge of any employee for conduct involving moral depravation. This is confirmed by Mr. Efrain Maceiras, the discharged employee's union represent-

ative, who states that the employee's "acts were in violation of Rule 9 of the Disciplinary Rule in force in our Company, La Concha Hotel." (p. 132–134 Transcript). Therefore, the fact that the employee's conviction was later reversed on appeal is irrelevant, since his discharge was founded on Rule 9 and not Rule 10.

The Arbitrator had the duty to evaluate the proof submitted during the proceedings by the parties under Rule 9, and to reach his own conclusions on whether the employee, Santiago Figueroa, incurred in conduct which was offensive to morals or involved moral deprivation during working hours or within company premises. At stake was the issue of whether an innkeeper is forced to retain in his workforce a person who engages in offensive moral conduct, and in particular when such conduct was directed to one of the guests of the Hotel. The arbitrator's rationale is tantamount to stating that a male employee of a tourist hotel can expose

his private parts to a female guest with impunity because there is nothing in the rules and regulations of the Hotel or the collective bargaining contract which specifically prohibits such conduct. More noise is made by a falling pin hitting the ground than by a judge's opinion which fails to provide guidance and perspective for lawyers and citizens to follow. The arbitrator's rationale is challenged here because the conduct of the employee is a per se violation of his employment contract without the need of any identification of rules or regulations. The subsequent reversal of the discharged employee's conviction would not have had any effect on the arbitration hearing. The burden of proof required at the arbitration hearing is the preponderance of the evidence standard, as opposed to the higher burden of proof of guilt beyond a reasonable doubt in a criminal proceeding. Rule 9 has no requirement that a criminal charge be filed against the employee or that a conviction for a felony or crime involving moral turpitude be obtained.

Article X, Section 11 of the Collective Bargaining Agreement provides that the arbitrator must conform his award to law and may not vary or alter the provisions of the contract. Although an arbitrator enjoys wide latitude in constructing a collective bargaining agreement, he is without authority to disregard or modify plain and unambiguous provisions. *Detroit Coil v. Int'l Assoc. of M & A Workers, etc.*, 594 F.2d 575, 580–581 (6th Cir.), *cert. denied* 444 U.S. 840, 100 S.Ct. 79, 62 L.Ed.2d 52 (1979). There is no question here that Rule 9 applies to all of plaintiff's employees. As the Arbitrator's decision concluded that Rule 9 was inapplicable to non-casino employees and that the reason for his discharge was for violation of Rule 10, his award was mistakenly based on a crucial assumption which is a non-fact and which materially altered the contractual language of the Collective Bargaining Agreement.

A fair reading of the above mentioned provisions in the collective bargaining agreement does not support the decision reached by the arbitrator. The arbitrator did not manifest a fidelity in interpreting that Rule 9 applied exclusively to Casino employees. This is not only irrational, but totally unsupported by principles of contract construction. *Arco Polymers, Inc. v. Local 8–74*, 671 F.2d 752, 757 (3rd Cir. 1982). In *International Brotherhood of Firemen v. Nestle Co., Inc.*, 630 F.2d 474, 477 (6th Cir.1980), the arbitrator's award ordered reinstatement of an insubordinate employee without back pay. The district court affirmed and, on appeal, the Sixth Circuit reversed and remanded with instructions to vacate the award concluding as follows:

"In our case, the collective bargaining agreement expressly provided that insubordination shall be grounds for discharge. It is clear and unambiguous. It needs no interpretation and we find no provision in it giving the arbitrator power to prescribe the penalty for violation of the collective bargaining agreement or to control the exercise of it by the employer. This power was rested solely in the employer."

The arbitrator's findings on the dismissal of the employee cannot stand. First, he excluded the husband from being present while his wife was to testify. This resulted in Mrs. Flores not testifying. Second, then the plaintiff presented into evidence the transcript of the criminal trial and the Arbitrator admitted it in substitution of Mrs. Flores' testimony. The discharged employee did not testify in both the criminal case and the arbitration proceeding. The only testimony the arbitrator had before him was Mrs. Flores' testimony (received through the transcript). After the case was submitted and surprisingly from the arbitrator's award, it appears that he changed his mind and decided to disregard the transcript which was the only evidence before him. Furthermore, because of his refusal to hear or admit evidence, the arbitrator could not provide plaintiff with an adequate opportunity to present evidence and ultimately reach a decision on specific facts.

The plaintiff could not present any evidence to the arbitrator, beyond the text of the agreement. Even so, the clear textual language of Rule 9 was misconstrued by the arbitrator. The fundamental fairness of the hearing was seriously impaired, and under the standards of judicial review discussed above, the award is not legitimate because it does not draw its essence from the collective bargaining agreement. *U.S. Steel Workers v. Enterprise Wheel,* 363 U.S. at 596–597, 80 S.Ct. at 1360–1361.

### D. CONCLUSION:

This Court concludes that the Arbitrator's decision and findings of fact are grossly mistaken, not based on the facts admitted in evidence, not drawn from the essence of the collective bargaining agreement and not susceptible to judicial affirmance.

Accordingly, for all of the above stated reasons, Summary Judgment is hereby GRANTED in favor of Plaintiff and the award is hereby VACATED.

IT IS SO ORDERED.

The Clerk is to enter JUDGMENT accordingly.