In the Matter of: Lewisburg Area Education Association and Lewisburg Area Board of School Directors. Lewisburg Area Board of School Directors, Appellant.

Argued December 9, 1976, before Judges CRUMLISH, JR., MENCER and BLATT, sitting as a panel of three.

*Louise O. Knight,* with her *Clement and Knight,* for appellant.

*William A. Hebe,* with him *Spencer, Gleason & Hebe,* for appellee.

OPINION BY JUDGE CRUMLISH, JR., April 4, 1977:

The Lewisburg Area Board of School Directors (Board) has appealed an arbitrator's award which reassigned Richard Runyan, a school teacher and member of the Lewisburg Area Education Association (Association), to a pay class designated "Masters" instead of leaving him in a "Bachelors" class into which the Board had placed him. We hold that the award violated the essence of the Collective Bargaining Agreement between the Board and the Association and accordingly vacate it.

Runyan had taught for eight years with an earned Bachelor's Degree, and had been paid according to the Bachelor's Degree-holders' scale. In November 1974 he received a "Master's Degree Equivalency Certificate" from the Pennsylvania Department of Education and, on the next date for salary changes, received a $300.00 salary increase. He received no written notice of the pay increase nor any statement indicating a change in salary class. However, the $10,000.00 salary he received after the increase corresponded exactly to the yearly salary of members of the "Masters" class under the then-existing agreement.

In October, 1975, shortly after a new Collective Bargaining Agreement (Agreement)[1] was signed, the Board's Payroll Department officially notified Run-

---

[1] The Agreement established a salary scale composed of six classes, each of which contained a number of steps which corresponded to years of service. Class I was composed of teachers possessing a Bachelor's Degree and College Certificate. Classes II through V were composed of teachers having Master's Degrees, with the differences between the four classes turning upon the number of additional college credit hours: Class II, less than 15 such hours; Class III, 15 to 29; Class IV, 30 to 45; Class V, 45 and above. Class VI was composed of teachers possessing a Doctorate. The salary differential between any two classes was the same at any step; the difference between Class I and Class II was $300.00; between Classes II and III, Classes III and IV, and Classes IV and V, the differen-

yan as follows: "Please be advised that your salary for 1975-1976 is $11,000.00. This places you on Class I Step 9 + M. EQ." Class I was the class for holders of Bachelor's Degrees and at Step 9 it indicated a salary of $10,700.00. The $300.00 increment brought Runyan's pay to $11,000.00 which, again, was the same salary paid to holders of Master's Degrees, at Class II, Step 9.

The 1975 Agreement contained the following "NOTE" in the section defining the salary classes:

> Teachers, who, at the time of execution of this Agreement are being paid on the same basis as those having an earned Master's Degree, shall be deemed to have an earned Master's Degree for purposes of application of this ARTICLE XXV.

The arbitrator reasoned that since Runyan was receiving the same yearly salary as a Master's Degree holder at the time the Agreement was executed, he was "being paid on the same basis" as one having an earned Master's Degree and had to be treated as such for salary classification purposes. The Board argues that the correspondence in salary is pure coincidence, flowing from the fact that Runyan's salary was increased by $300.00 to comply with Section 1142 (g) of the Public School Code (Code)[2] which requires holders of a Master's Degree or its equivalent to be

---

tial was $150.00; Doctorate holders received $550.00 more than Class V Masters.

[2] Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §11-1142 (g), states:

> Any professional employe or temporary professional employe who holds a Master's Degree or its equivalent shall be placed on a step which shall be at least three hundred dollars ($300) in addition to the minimum salary of an employe who holds a college certificate and who does not hold a Master's Degree and who has the same number of years of service in the district.

paid at least $300.00 more than a college certificate holder who does not have a Master's Degree, while at the same time the Agreement specified a salary differential of $300.00 between the Bachelors pay class and the Masters pay class. Hence, the Board argues, Runyan was not being paid "on the same basis" as a Master's Degree holder, simply because he was receiving the same salary. The Board contends that the "Note" was intended as a "grandfather clause" or "red circling," whose purpose was to cloak certain teachers, who had nearly completed the program for an earned Master's Degree and who were receiving benefits under the previous contract, with the benefits accruing to Masters under the new agreement.

The controversy herein, while it does not involve Runyan's present salary, does have a crucial effect upon his future pay scale. The Board argues that if the arbitrator's reassignment of Runyan to Class II Masters is allowed to stand, the way will be clear for him and other similarly situated teachers to advance to Classes III, IV and V without acquiring an earned Master's Degree, but merely by accumulating the graduate credits required by those classes.

The Board is arguing essentially that the arbitrator has rendered the obtaining of a Master's Equivalency indistinguishable from the obtaining of a Master's Degree (an argument which is supported by the language of the arbitrator's opinion) and that in so doing, he has undermined the purpose and philosophy of the salary class designations which, it alleges, is to compensate teachers according to their degree status and additional earned credits.[3]

---

[3] In support of this proposition, the Board calls to our attention Article XXV, Section 25.2 of the Agreement, which states:

For purposes of salary determination, each teacher shall be placed in the highest class, as set forth in section 25.4 and 25.5, commensurate with that teacher's degree status and additional credits earned.

We have adopted as the scope of our review of an award of an arbitrator commissioned pursuant to a collective bargaining agreement the standard first enunciated by the United States Supreme Court when it held that ''an arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from many sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement.'' *United Steelworkers of America v. Enterprise Wheel and Car Corp.,* 363 U.S. 593, 597 (1960). The Third Circuit Court of Appeals developed the concept further, writing that ''a labor arbitrator's award does 'draw its essence from the collective bargaining agreement' if the interpretation can in any rational way be derived from the agreement, viewed in the light of its language, its context, and any other indicia of the parties' intention; only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.'' *Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3rd Cir. 1969). This Court has consistently followed that standard.[4]

We have studied the entire Agreement and are compelled by its language and the rules of contract construction to conclude, contrary to the arbitrator, that the obtaining of a Master's Equivalency was never intended by the parties to be sufficient for entry into the Masters' salary classes. If the arbitrator is correct, a teacher would be able to attain the salary scale next to the Doctorate's without having been awarded a Master's Degree from an academic in-

---

[4] *See American Federation of State, County, and Municipal Employees, AFL-CIO v. Commonwealth of Pennsylvania,* 24 Pa. Commonwealth Ct. 162, 354 A.2d 1 (1976), and cases cited therein.

stitution, a result which we cannot attribute to the parties.

The Agreement repeatedly and specifically states that the Masters' classes are to be composed of "teachers with an earned Master's Degree." Absent a concrete showing[5] by the Association that the term was intended to encompass also the Master's Equivalency, we find no basis for the arbitrator's expansion of the term beyond its ordinary meaning, *i.e.*, a degree conferred by an accredited academic institution. In holding that the term "Master's Degree" does not include the Master's Equivalency, we are supported by Section 1141(5) of the Code, which states that, for purposes of the subdivision on teacher's compensation:

'Master's Degree' shall mean a degree secured at a college or university approved by the Department of Public Instruction.

The State Board of Education shall establish equivalents for both college certificates and master's degrees. In determining the equiva-

---

[5] On page 6 of his opinion, the arbitrator states:

Neither party introduced evidence concerning the standards applied by the State Department of Instruction [in granting Master's Equivalency Certificates]. It is reasonable to infer, however, that the department does not issue the certificate unless it is satisfied that the teacher has satisfactorily completed the work that would ordinarily entitle him to a degree.

The drawing of such a crucial inference in the total absence of evidence to support it was improper and beyond the arbitrator's powers. Far from being "reasonable," the inference flies in the face of common knowledge that the requirements for a Master's Equivalency are not as rigorous as those for an academically conferred degree. Pennsylvania Department of Education Regulations governing the Master's Equivalency, found at 22 Pa. Code §49.65, require neither the writing of a thesis, essay or report, nor the taking of an examination, nor the fulfilling of all credits in a structured course setting, which items are generally required for institutionally conferred degrees.

494

> lents, in the case of teachers of applied arts and vocational subjects, the State Board of Education shall give due consideration to practical experience in the field taught.

This clearly indicates that our legislature regarded the two classes as distinct, and that when, in the next section, it mandated that both equivalency holders and degree holders receive the same $300.00 salary increment, it did not intend thereby to equate the two.

Finally, we adopt the Board's view of the significance of the above cited "NOTE." We are unable to conclude that a teacher is being paid "on the same basis" as a Master merely by reason of his being paid the same amount.

For these reasons, the conclusion reached by the arbitrator is without foundation in the Collective Bargaining Agreement and therefore fails to draw its essence from the Agreement.

Accordingly, we

ORDER

AND Now, this 4th day of April, 1977, the award of the arbitrator is hereby vacated.