ACME MARKETS, INC., Appellee,

v.

**LOCAL 6, BAKERY & CONFECTIONERY WORKERS INTERNATIONAL UNION, Appellant.**

No. 79–1843.

United States Court of Appeals, Third Circuit.

Submitted Jan. 7, 1980.

Decided Jan. 18, 1980.

Bernard N. Katz, Warren J. Borish, Meranze, Katz, Spear & Wilderman, Philadelphia, Pa., for appellant.

---

Alfred J. D'Angelo, Jr., Cunniff, Bray & McAleese, Bala Cynwyd, Pa., for appellee.

Before GIBBONS, ROSENN and GARTH, Circuit Judges

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

Local 6, Bakery & Confectionery Workers International Union (Local 6), appeals from a judgment granting Acme Markets, Inc.'s (Acme), motion for summary judgment vacating an arbitration award compensating Local 6 members for wages lost during an illegal lockout. The appeal is closely related to a previous appeal involving one of the present parties and a nearly identical provision in a separate labor contract. *Philadelphia Food Store Employers' Labor Council v. Retail Clerks International Association Locals 1349, 1357, 1358, 1360, 1361, 1371 and 1393 (Philadelphia Food)*, 601 F.2d 575 (3d Cir. 1979) (per curiam not for publication).[1] We vacate the summary judgment and remand the case for entry of judgment in favor of Local 6.

Acme, Food Fair Stores, Inc. (Food Fair), and the Atlantic and Pacific Tea Company (A & P) are members of a multi-employer bargaining unit known as the Philadelphia Food Store Employers Labor Council (Employers Council). The Amalgamated Meatcutters Union (Meatcutters), the Retail Clerks International Association (Retail Clerks), and Local 6 are members of the Employers Council's labor counterpart, the Union Food Council (Food Council). While the Meatcutters, the Retail Clerks, and Local 6 are all members of the Food Council they individually negotiate separate collective bargaining agreements with the Employers Council.

On March 6, 1977, the Meatcutters, upon expiration of their collective bargaining agreement, struck Food Fair. Pickets were posted outside all Food Fair stores. The Retail Clerks, honoring the Meatcutters picket lines, refused to cross the lines and failed to report for work. As a result of the Retail Clerks' actions, all, or most, of Food Fair's stores were closed. Acme and A & P retaliated by closing down their stores on March 9, 1977, to prevent union "whipsawing" of the multi-employer bargaining unit. Because of the shutdown of Acme stores, the Acme bakery, which provided Acme stores with Acme name-brand baked goods, was deprived of a market for its production. Accordingly, on March 11, 1977, Acme notified all Local 6 members that they were not to report to work for the work week beginning March 12, 1977. Both the Retail Clerks and Local 6 initiated arbitration proceedings claiming that the shutdowns constituted illegal lockouts under the terms of their respective collective bargaining agreements.

The Retail Clerks' dispute was arbitrated first. The arbitrator, concluding that the Acme and A & P store closings were strategic (i. e., designed to gain some advantage or avoid some disadvantage in the Meatcutter contract negotiations), and not economic (i. e., designed to avoid losses occasioned by extrinsic business factors), found that the store closings constituted lockouts within the meaning of the Retail Clerk collective bargaining agreement. Accordingly, he ordered all Acme and A & P stores re-opened, and required Acme and A & P to pay Retail Clerk members wages lost during the illegal lockout. The district court disagreed with the arbitrator's decision. It set aside the arbitration award, determining that the arbitrator had incorrectly construed the term lockout and in so doing had undermined the parties' expressed intent.

On appeal this court vacated the district court's judgment and remanded with di-

---

1. The disputed provision in *Philadelphia Food* read:

The parties agree that there shall be no authorized strikes, stoppages of work, slowdowns, lockouts, or any other interferences of whatsoever nature during the life of this Agreement.

The disputed provision in this case reads:
There shall be no strike, lockout, interruption of work, boycott or temporary walkout during the term of this Agreement.

rections to enter judgment for the Union. *Philadelphia Food*, 601 F.2d 575 (3d Cir. 1979). Citing *Ludwig Honold Manufacturing Co. v. Fletcher*, 405 F.2d 1123 (3d Cir. 1969), the court said:

> We do not find the arbitrator's decision to lack a rational basis, nor do we believe this his use of the terms "strategic" and "economic" were contrary to the general understanding of "lockout." The interpretation of the term was clearly within the scope of the issue submitted to the arbitrator, and his determination should not have been disturbed.

*Philadelphia Food*, 601 F.2d 575, slip op. at 4 (3d Cir. 1979).

After the Retail Clerk arbitration, but before the district court decision in *Philadelphia Food*, the Local 6 arbitration with Acme was heard. Quoting extensively from the *Philadelphia Food* arbitration decision, and relying upon the Retail Clerk arbitrator's conclusion that the Retail Clerk lockout was illegal, the Local 6 arbitrator concluded that the bakery shut-down also constituted an illegal lockout. He asserted that the "cessation of employment having its origin in illegal lockout which the employer predicated upon a finding of multi-union alliance means that the Local 6 pay loss is similarly a lockout." Once again on petition to review the arbitrator's decision the district court disagreed and vacated the arbitration award. Relying upon its previous decision in the *Philadelphia Food* litigation, the district court determined, before disposition of *Philadelphia Food* on appeal, that an illegal lockout could not exist in the absence of offensive employer conduct and that store closings to prevent whipsawing and to preserve the integrity of a multi-employer bargaining unit did not constitute offensive employer conduct. Again we cannot agree with the district court's determination and remand for reinstatement of the arbitrator's award.

*Philadelphia Food* is dispositive of this case. In *Philadelphia Food* we held that the arbitrator's determination that the Acme and A & P shutdowns constituted illegal lockouts within the no strike-no lock-out provision of the Retail Clerk labor contract was not unreasonable and drew its essence from the collective bargaining agreement. Since the no strike-no lockout provision in this case is indistinguishable from the no strike-no lockout provision in *Philadelphia Food*, we reach the same conclusion here: the arbitrator's determination that Acme's actions were prohibited by the Local 6 no strike-no lockout provision is not irrational. *Ludwig Honold Manufacturing Co. v. Fletcher*, 405 F.2d at 1128. Moreover, independently, under *Ludwig Honold*, we would arrive at the same conclusion. The bakery was operated by Acme, and Acme *knew*, when it made the decision to close its stores, that the decision would have a direct effect on the bakery's operation. Thus the closing of the bakery was a direct result of Acme's strategic decision to close its stores and, under the circumstances, the arbitrator's determination that the bakery closing was prohibited by the no strike-no lockout contract provision was reasonable.

Therefore, we vacate the district court's judgment and remand for entry of judgment in favor of Local 6.