**PENNTECH PAPERS, INC., Appellee,**

v.

**UNITED PAPERWORKERS INTERNATIONAL UNION, AFL–CIO–CLC; and Local Union No. 710, United Paperworkers International Union, AFL–CIO–CLC, Appellants.**

No. 89–3655.

United States Court of Appeals, Third Circuit.

Argued Feb. 9, 1990.

Decided Feb. 21, 1990.

Richard H. Markowitz (argued), Joseph T. Cleary, Markowitz & Richman, Philadelphia, Pa., Lynn Agee, Lynn C. Ivanick, United Paperworkers Intern. Union, AFL–CIO, Legal Dept. Nashville, Tenn., for appellants.

Ernest J. Collazo (argued), Robert V. Chisholm, Simpson Thacher & Bartlett, New York City, for appellee.

Before GREENBERG, SCIRICA and SEITZ, Circuit Judges.

### OPINION OF THE COURT

SEITZ, Circuit Judge.

Defendants, United Paperworkers International Union, AFL–CIO–CLC and Local No. 701, United Paperworkers International Union AFL–CIO–CLC (Union), appeal from a final order of the district court granting the plaintiff, Penntech Papers, Inc. (Penntech), summary judgment in its action to vacate an arbitration award. Our review is plenary.

The district court's jurisdiction was based on Section 301 of the Labor–Management Relations Act of 1947, 29 U.S.C. § 185 (1982). We have jurisdiction under 28 U.S.C. § 1291 (1982).

Penntech and the Union were parties to a collective bargaining agreement which was effective from June 10, 1986, through June 10, 1989. Under the terms of this agreement, if Penntech substantially changed the duties of an existing job classification so as to make its wage rate out of line with representative jobs in the plant, it was required to negotiate the matter with the Union.

On November 15, 1987, Penntech eliminated the Starch Mixer classification and

incorporated the duties of this position within the existing job classification of Size and Clay Mixer. The Union filed a grievance alleging that such a change warranted a new wage rate for the Size and Clay Mixer position.

When no agreement could be reached, the Union presented the matter for arbitration under the arbitration provisions of the collective bargaining agreement.[1] On May 5, 1989, the arbitrator found that the elimination of the Starch Mixer (or helper) position and the absorption of that job's duties into the job of the Size and Clay Mixer (or operator) constituted a substantial change in the position.

The arbitrator further concluded that, since an increase of $.25 was implemented in a prior, similar restructuring, the wage rate of the Size and Clay Mixer was "out of line" with representative jobs in the plant. He, therefore, awarded an increase of $.25 per hour.

On May 25, 1989, Penntech filed suit to vacate and set aside the arbitrator's award. The district court granted the company's motion for summary judgment on the basis that the award did not draw its essence from the collective bargaining agreement. Specifically, it held that the arbitrator exceeded his authority in awarding a rate increase without detailed job duty/wage comparisons, which it concluded were called for by his construction of the collective bargaining agreement. This appeal followed.

The Supreme Court has narrowly circumscribed the scope of judicial review of a labor arbitration award. "Unless the arbitral decision does not 'draw[ ] its essence from the collective bargaining agreement,' a court is bound to enforce the award and is not entitled to review the merits of the contract dispute." *W.R. Grace & Co. v. Local Union 759, Int'l Union of the Unit-*

 *ed Rubber Workers,* 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298 (1983) (quoting *United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960)). We have consistently applied this standard in reviewing district court dispositions of arbitration cases. *See, e.g., Ludwig Honold Mfg. Co. v. Fletcher,* 405 F.2d 1123, 1128 (3d Cir.1969). We turn to the present facts.

At the hearing before the arbitrator, the parties could not agree on the wording of the arbitral issue. Penntech proposed the following:

> Have the duties of the Size and Clay Mixer changed substantially so as to bring its job rate out of line with representative jobs within the plant?

The Union's version was as follows:

> Have the duties and responsibilities of the Size and Clay Mixer classification changed enough since June 10, 1986, to warrant an increase in wages? If so, what shall the remedy be?

Penntech objected to the Union's formulation on two grounds: that it used the word "enough" to refer to the change instead of the word "substantially" as provided for in the agreement; and that it did not contain the contract requirement that the job rate be out of line with other representative jobs. It is not disputed that the parties finally agreed to allow the arbitrator to formulate the issue.

The arbitrator accepted the Union's framing of the issue,[2] with the only modification being substitution of the word "substantially" for the word "enough." The formulation did not contain the "out of line" language pertaining to the job rate, which Penntech had requested. After a hearing, the arbitrator filed an opinion and award in favor of the Union. He determined that there had been a substantial

---

1. Article VII, paragraph 23, provides:

   If agreement cannot be reached on a proper wage rate for a new or changed job within thirty (30) days of the first bargaining meeting, the dispute may be processed beginning at Step Four (Arbitration) of the grievance procedure.

   Article XI, paragraph 81, provides in pertinent part:
   The decision of the Arbitrator shall be conclusive and binding on all parties concerned.

2. The arbitrator erroneously stated that the parties agreed to the terms of the issue to be arbitrated. This error is of no moment here.

change in the Size and Clay Mixer job and that the appropriate remedy was a rate increase like that granted in a prior, similar situation.

The controlling provision of the collective bargaining agreement reads:

If the duties and responsibilities of any existing job classification are changed substantially after June 10, 1986, and/or a number of changes equaling a substantial change are made and the result is to bring its rate out of line with representative jobs within the plant, the Company will negotiate the matter upon written request of the Union. If a new wage is agreed upon, the changed rate will be retroactive to the date the substantial change occurred.

The arbitrator found that the duties and responsibilities of the job in question changed substantially after June 10, 1986. Neither Penntech nor the district court disputed this finding. Rather, the district court disagreed with the arbitrator's interpretation and application of the provision of paragraph 22 of the contract which requires a determination of whether the result of the change "is to bring its rate out of line with representative jobs within the plant."

We conclude that the arbitrator did not ignore the provision at issue. Rather, he stated that it is reasonable to conclude that, if the rate for a job was in line with its duties at the outset, a substantial change in duties would bring its rate "out of line" with representative positions in the plant. The arbitrator acknowledged that evidence on the quoted provision was minimal, consisting solely of the Union's testimony that a $.25 increase was awarded to the E. Rewinder when the utility employee was eliminated. He noted that such an increase in the instant case, though it would cause a jump in the relative standing of the Size and Clay Mixer position, would not cause the position to rise to the top of the rates for all positions. Thus, the arbitrator relied on precedent, rather than a job rate comparison, to determine whether the wage rate for the position was out of line.

In vacating the award, the district court held that paragraph 22 required the Union to prove and the arbitrator to find that the present rate was out of line with other jobs. That the arbitrator did so is plain in light of the award of a rate increase. The contract does not specify how he was to make the out-of-line determination. It does not require the wage rate comparison mandated by the district court. We find that consideration of a $.25 increase granted in a similar restructuring is a permissible method of determining that the wage rate for the Size and Clay Mixer position was out of line.

As the Supreme Court has said: "It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his." *Enterprise Wheel*, 363 U.S. at 599, 80 S.Ct. at 1362. Our continued allegiance to this principle serves to protect the benefits of labor arbitration, namely, speed, flexibility, informality and finality.

The Union argues, alternatively, that the arbitrator's award addressed the exact issue which the parties agreed to allow the arbitrator to formulate and, under controlling law, that should be the end of the matter. Penntech retorts that this legal theory was not advanced in the district court and therefore should not be considered on appeal. In view of our determination in favor of the Union on its first theory, we need not address this issue.

Accordingly, the judgment of the district court will be reversed and the matter remanded for further appropriate proceedings.