921 F.2d 40
 NEWS AMERICA PUBLICATIONS, INC., DAILY RACING FORM DIVISION
v.
NEWARK TYPOGRAPHICAL UNION, LOCAL 103, (an unincorporated
association).
Appeal of NEWARK TYPOGRAPHICAL UNION, LOCAL 103, Appellant.
 No. 90-5305.
 United States Court of Appeals,
Third Circuit.
 Dec. 3, 1990.
 
 Prior Report: 918 F.2d 21.
 Before HIGGINBOTHAM, Chief Judge, and SLOVITER, BECKER, STAPLETON, MANSMANN, GREENBERG, HUTCHINSON, SCIRICA, COWEN, NYGAARD and ALITO, Circuit Judges.
 
 ORDER SUR PETITION FOR REHEARING
 
 1
 The petition for rehearing filed by appellee in the above entitled case having been submitted to the judges who participated in the decision of this Court and to all the other available circuit judges of the circuit in regular active service, and no judge who concurred in the decision having asked for rehearing, and a majority of the circuit judges of the circuit in regular service not having voted for rehearing, the petition for rehearing by the panel and the Court in banc, is denied.
 
 
 2
 BECKER, Circuit Judge, would grant rehearing in banc for the reasons set forth in his Statement Sur Denial of Rehearing In Banc, which is attached to this Order.
 
 
 3
 SLOVITER, Circuit Judge, would also have granted rehearing essentially for the reasons set forth in Judge BECKER's statement.
 
 
 4
 BECKER, Circuit Judge.
 
 
 5
 The collective bargaining agreement sub judice provides that if the Daily Racing Form and the Typographical Union do not reopen their contract for wage adjustments or are unable to reach an agreement on wage adjustments, the "equivalent of any economic package" granted by the Daily Racing Form to the Mailers' or Pressmen's Unions, during the twelve months prior to November 1 of any year, "will be automatically granted to Newark Typographical Union members effective on November 1," (emphasis added). The Typographical Union claimed that because the effective date of the Mailers' Union increase was advanced from November 1 to August 1 when the Mailers renegotiated their contract in 1986, the effective date for the Typographical Union increase also should have been accelerated under the aforedescribed section of their collective bargaining agreement with the Daily Racing Form. The arbitrator agreed.
 
 
 6
 The linchpin of the court's decision, which blesses the arbitrator's award, lies in its statement that:
 
 
 7
 We must accept the arbitrator's conclusion that the term "economic package" not only includes the wage increase, but also other means of "massaging the numbers," including an accelerated wage increase. In this regard, the reference to August 1, 1988 in the arbitral award was included because it appeared to the arbitrator to be the "simplest" way to calculate the equivalent of a three month acceleration in wages. The arbitrator's use of August 1 was a means to calculate an equivalent package, not an end in and of itself.
 
 
 8
 See 918 F.2d at 25 (emphasis added). With all respect, I believe that this statement, in condoning such a "massage of the numbers," has permitted the arbitrator to transform the contractual arbitration into an equitable dispensation of his own brand of industrial justice, an endeavor expressly forbidden by the Supreme Court's decision in United Paperworkers International Union v. Misco, Inc., 484 U.S. 29, 108 S.Ct. 364, 98 L.Ed.2d 286 (1987), and our decision in Ludwig Honold Mfg. Co. v. Fletcher, 405 F.2d 1123 (3d Cir.1969).
 
 
 9
 That the arbitrator "ignore[d] the plain language of the contract," Misco, 484 U.S. at 38, 108 S.Ct. at 371, is readily apparent. As the district court so acutely noted, "the term 'effective November 1st' cannot plausibly be interpreted to mean August 1." The record reveals that when the Typographical Union had bargained for an acceleration of its wage increases, it said so explicitly, as in its contracts with Home News and Middlesex County. In this instance, however, the Typographical Union only bargained for a wage and benefit increase equal to that given to the Mailers and the Pressmen. Under the terms of the agreement, these increases were to become effective on November 1 regardless of when the latter two unions received their increases. This interpretation is bolstered by the last sentence of the critical paragraph of the collective bargaining agreement, which states that "[s]uch economic package will be added to wages unless the parties mutually agree to divert some portion of the package to other purposes." A common sense reading of this sentence indicates that the term "economic package" means nothing more than what unions and employers normally mean by the term, namely, the aggregate of wages and fringe benefits.
 
 
 10
 As the court correctly states, so long as the arbitrator arguably has construed or applied the contract, the award must be enforced, even if the court is convinced that the arbitrator has committed a serious error. Misco, 484 U.S. at 38, 108 S.Ct. at 371. Moreover, " 'only where there is a manifest disregard of the agreement, totally unsupported by principles of contract construction and the law of the shop, may a reviewing court disturb the award.' " NF & M Corp. v. United Steelworkers of America, 524 F.2d 756, 759 (3d Cir.1975) (quoting Ludwig Honold, 405 F.2d at 1128). Here, however, it cannot be said that the arbitrator simply misread the contract. Nor can it be said that the arbitrator was "arguably construing or applying the contract and acting within the scope of his authority," Misco, 484 U.S. at 38, 108 S.Ct. at 371. Rather, the arbitrator ignored the plain language of the contract, which says "effective November 1," and hence acted in manifest disregard of the agreement. His decision is also "totally unsupported by principles of contract construction or the law of the shop," see Ludwig Honold, 405 F.2d at 1128. At least, no such principle or shop custom has been identified here.
 
 
 11
 The court, in short, has gone beyond the pale. It has, in essence, waived a wand over the arbitrator's award by permitting him to "massage the numbers" and to construe "equivalent economic package" so as to accelerate a wage increase in contravention of the clear and unambiguous terms of the collective bargaining agreement. In apparent self justification, the court has rescribed Judge Aldisert's observation that federal labor law elevates labor arbitrators to "an exalted status." Id. at 1126. But, in reality, the court has gone much further. Indeed, I view the court as having said, in effect, "all power to the arbitrators," for under the court's opinion, our national policy of arbitral deference has essentially no limits. Yet there must be limits, for neither the Steelworkers' trilogy nor anything in our jurisprudence confers upon the arbitrator such transcendent power, especially in such a core area as the implementation of a significant wage increase.
 
 
 12
 I would grant rehearing and affirm the judgment of the district court.