ALDISERT, Circuit Judge,
dissenting in part.
I am pleased to join Judge Ambro’s majority opinion for the Court in most respects, but I would hold that the parties’ reinsurance treaties evince a clear intent to adopt the vacatur standards of the Pennsylvania Uniform Arbitration Act. Accordingly, I respectfully dissent from Part III(B) of the Court’s opinion.
I.
What divides the panel is a disagreement over which body of law governs judicial review of the disputed arbitration award — whether it be the Federal Arbitration Act (“FAA”), 9 U.S.C. §§ 1-16, or the Pennsylvania Uniform Arbitration Act (“PUAA”), 42 Pa. Cons.Stat. Ann. §§ 7301-7320. The difference between the scope of judicial review of an arbitration award pursuant to the Federal Arbitration Act and the scope of review available under Pennsylvania law has commanded the attention of this court for over 40 years, ever since 1969, when I authored the primary opinion of the Court in Ludwig Honold Manufacturing Co. v. Fletcher, 405 F.2d 1123 (3d Cir.1969) (comparing vacatur standards of the FAA with those of PUAA’s statutory predecessor). The FAA standards still rigorously limit judicial intervention, requiring challengers to show the award was “completely irrational,” a near prohibitive burden. Mut. Fire, Marine & Inland Ins. Co. v. Norad Reinsurance Co., 868 F.2d 52, 56 (3d Cir.1989); see also 9 U.S.C. § 10(a)(l)-(4). Under the PUAA, by contrast, a court may modify or correct an award that is “contrary to law.” 42 Pa. Cons.Stat. Ann. §§ 7301(d)(2) & 7314(a).
The determination of applicable law turns on whether the arbitration provisions of the parties’ reinsurance treaties evince a “clear intent” to impose the vacatur standards of the PUAA over the presumptively applicable standards of the FAA. See Roadway Package Sys., Inc. v. Kayser, 257 F.3d 287 (3d Cir.2001). As we explained in Roadway, this “clear intent” *299 standard is intended to protect parties’ rights to contract for applicable law:
[T]he rule we announce will preserve and facilitate the ability of parties to contract around the default federal standards. Sophisticated parties (i.e., those who employ experienced lawyers to draft their contracts) will soon learn that a generic choice-of-law clause is not enough. Assuming that both parties genuinely wish to be governed by standards other than the FAA’s, requiring something more will impose minuscule transaction costs. It is not particularly difficult, for example, to provide that “any controversy shall be settled by arbitration in accordance with the terms of the Pennsylvania Uniform Arbitration Act.”
Id. at 297 (emphases in original). As a general matter, applying the “clear intent” standard so strictly as to functionally preclude parties from contracting for non-FAA standards is contrary to Roadiva/y’s attempt to fashion a rule protecting parties’ right to determine the substantive law governing arbitration of their disputes and judicial enforcement vel non of any arbitral award. As the Supreme Court explained,
[arbitration under the Act is a matter of consent, not coercion, and parties are generally free to structure their arbitration agreements as they see fit. Just as they may limit by contract the issues which they will arbitrate ... so too may they specify by contract the rules under which that arbitration will be conducted. Where, as here, the parties have agreed to abide by state rules of arbitration, enforcing those rules according to the terms of the agreement is fully consistent with the goals of the FAA.
Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ., 489 U.S. 468, 479, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989) (citation omitted).
On my reading, the language of the treaties “suggested that the parties intended to be bound by standards borrowed from state law,” Roadway, 257 F.3d at 297 n. 5, with sufficiently “clear intent.” The treaties mandate, in relevant part:
[AJny dispute or difference between the Reinsured and the Reinsurers relating to the interpretation or performance of this Agreement ... or any transaction under this Agreement ... shall be submitted to binding arbitration ... in accordance with the rules and procedures established by the [PUAA].
(J.A. 141) (emphasis added.) The language of the arbitration provision is specific and unambiguous, and it evinces an intent by the parties to “abide by state rules of arbitration.” Volt, 489 U.S. at 479, 109 S.Ct. 1248. The PUAA contains rules of judicial vacatur. See 42 Pa. Cons.Stat. Ann. § 7314(a) (“General rule — (1) On application of a party, the court shall vacate an award where ... ”) (emphasis added). Consequently, when the parties contracted to have “any dispute or difference” between them governed by arbitration in accordance with the “rules and procedures” of the PUAA, they successfully demonstrated a clear intent to adopt, inter alia, the vacatur rules of the PUAA. Although I agree with the majority’s characterization of the arbitration clause as concerned largely with the execution of the arbitration itself, that is insufficient to render null and void the clear mandate of the contractual language, incorporating the PUAA, which includes a specific provision detailing when a court may “vacate an award.” 42 Pa. Cons.Stat. Ann. § 7314(a).
I also cannot agree with the majority’s conclusion that the service-of-suit clause can be read to abrogate the arbitration clause’s wholesale adoption, by plain lan *300 guage, of the “rules and procedures” of the PUAA. (J.A. 141.) A service-of-suit clause is a mechanism to assist implementation of an arbitration award by establishing a judicial forum for the enforcement of the award.[18] Service-of-suit clauses are profoundly distinct from choice-of-law clauses, and I cannot adopt the majority’s stretch of the canons of logical inference to conclude that a service-of-suit clause, without more, may dictate the choice of substantive law by omitting an affirmative declaration of what standard should govern judicial review of arbitral awards. This qualifies, I believe, as the fallacy of non sequitur.[19] Our Court has recently rejected just such an attempt to interpret a service-of-suit clause to mandate the form of dispute-resolution: “[s]ervice-of-suit clauses do not negate accompanying arbitration clauses; indeed, they may complement arbitration clauses by establishing a judicial forum in which a party may enforce arbitration.” Century Indem. Co. v. Certain Underwriters at Lloyd’s, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, & 950646, 584 F.3d 513, 554 (3d Cir.2009) (emphasis added). Service-of-suit clauses are simply not intended, nor are they designed, to select governing substantive law, absent the inclusion of an affirmative choice-of-law provision. Accordingly, the failure of the clause in question to explicitly adopt the PUAA’s vacatur standards does not even suggest, much less compel, a finding that the parties’ contractual adoption of the “rules and procedures” of the PUAA to govern arbitration of “any dispute or difference” excepts the rules for judicial review of contested awards. (J.A. 141,142.)
II.
In my view, the plain language of the arbitration provision demonstrates a sufficiently clear intent to impose all the rules and procedures of the PUAA, including the vacatur rules, 42 Pa. Cons.Stat. Ann. §§ 7302(d)(2) & 7314(a). I would remand these proceedings to the District Court for reconsideration of the Motion to Vacate under the vacatur provisions of the PUAA. For the foregoing reasons, I respectfully dissent from the reasoning and conclusion of Part III(B) of the Court’s opinion.

. This is of particular necessity when one party to a contract resides and conducts business almost exclusively outside of the United States. This likely explains why the service-of-suit clause specifically subjects the London-based Reinsurers — and not the Reinsured — to the jurisdiction of any court of competent jurisdiction in the United States.

. An argument that contains a conclusion that does not necessarily follow from the premises offered in its support.